No. 25-2808

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,

*Plaintiffs-Appellees,*

*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of California (Hon. Araceli
Martinez-Olguin)
No. 3:25-cv-02847-AMO

---

## APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION TO STAY

---

GIBSON DUNN & CRUTCHER LLP

Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur M. Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Monica K. Loseman (CO Bar. No. 34119)
Laura M. Sturges (CO Bar No. 36843)
Patricia M. Herold (CO Bar No. 54552)
Caelin Moriarity Miltko (CO Bar No. 56721)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700

Richard W. Mark (NY Bar No. 1705292)
200 Park Avenue
New York, New York 10166-0193
(212) 351-4000

IMMIGRANT DEFENDERS LAW
CENTER

Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
(213) 634-0999

JUSTICE ACTION CENTER

Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No.
355645)
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272

AMICA CENTER FOR IMMIGRANT
RIGHTS

Adina Appelbaum (VA Bar No. 88974)
Samantha Hsieh (VA Bar No. 90800)
Peter Alfredson (DC Bar No. 1780258)
Evan Benz (NC Bar No. 49077)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

BACKGROUND ................................................................... 3

    A.    Congress Directed HHS to Fund Counsel for Unaccompanied Children. ................................................................................ 3

    B.    ORR's Regulations Require Funding for Legal Services for UCs Consistent with Available Appropriations. ................................... 4

    C.    Defendants Terminated Funding for Legal Representation for UCs... 6

    D.    The District Court Preliminarily Enjoined the Termination. ............... 7

STANDARD ...................................................................... 7

ARGUMENT...................................................................... 8

    A.    Defendants Have Not Made the Required Threshold Showing of Irreparable Harm to Justify an Immediate Stay. ............................. 8

    B.    Defendants Cannot Satisfy the Remaining Requirements for An Immediate Stay. ............................................................. 12

        i.    Defendants Are Unlikely to Succeed on the Merits ...................... 12

        ii.    The Equitable Factors Do Not Favor A Stay. ................................ 21

CONCLUSION .................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ..............................................................8, 9

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .........................................................................13, 14

*City of Los Angeles v. U.S. Dep't of Com.*,
  307 F.3d 859 (9th Cir. 2002) ..................................................................17

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ...............................................................13

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) ........................................................................14, 15

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) ...................................................................9

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ...................................................................11

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ...................................................................9

*Hernandez-Gil v. Gonzales*,
  476 F.3d 803 (9th Cir. 2007) ...................................................................20

*Jajati v. U.S. Customs & Border Prot.*,
  102 F.4th 1011 (9th Cir. 2024) ..........................................................16, 17

*Kiobel v. Royal Dutch Petrol.*,
  569 U.S. 108 (2013) .................................................................................10

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) .................................................................................11

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) (per curiam).................................................8

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) .....................................................................16, 17, 19

*Maine v. U.S. Dep't of Agric.*,
  2025 WL 1088946 (D. Me. Apr. 11, 2025) .............................................10

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .....................................................12, 13, 14

ii

*In re Mortg. Elec. Registration Sys., Inc.*,
   754 F.3d 772 (9th Cir. 2014) ............................................................... 11

*Nat'l Ass'n of Mfrs. v. U.S. Dep't of Homeland Sec.*,
   491 F. Supp. 3d 549 (N.D. Cal. 2020) ................................................. 11

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................... 8, 21, 22

*Perez Perez v. Wolf*,
   943 F.3d 853 (9th Cir. 2019) ........................................................ 16, 17

*Rhode Island v. Trump*,
   2025 WL 1303868 (D.R.I. May 6, 2025) ............................................. 9

*Robbins v. Reagan*,
   780 F.2d 37 (D.C. Cir. 1985) ............................................................. 16

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ........................................................... 10

*State v. Azar*,
   385 F. Supp. 3d 960 (N.D. Cal. 2019), *vacated on other grounds
   and remanded sub nom. California ex rel. Becerra v. Azar*, 950
   F.3d 1067 (9th Cir. 2020) ................................................................ 22

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) ....................................................... 12, 13

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) ........................................................... 10

*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) ............................................................. 17

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
   586 U.S. 9 (2018) ............................................................................... 16

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
   2025 WL 1116157 (D.R.I. Apr. 15, 2025) ....................................... 10, 15

**Statutes**

6 U.S.C. § 279(b)(1)(A) ........................................................................ 3

8 U.S.C. § 1232 .................................................................... 3, 4, 16, 17

31 U.S.C. § 1301(a) .............................................................................. 10

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div.
   D Tit. I, 138 Stat. 460, 664–65 ..................................................... 5, 20

INA § 1362 ...................................................................................... 19, 20

September 30, 2027. Full-Year Continuing Appropriations and
Extensions Act, 2025, Pub. L. 119-4, div. A, tit. I, § 1101(8) ......................5, 20

William Wilberforce Trafficking Victims Protection Reauthorization
Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ..............................................2

## Other Authorities

Merriam-Webster's Collegiate Dictionary 974 (11th ed. 2008) ............................17

Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children
Through the Immigration System* (March 2012),
https://shorturl.at/KI3Jt ...........................................................................................4

ORR, About the Unaccompanied Alien Children Bureau (Apr. 23,
2025), https://shorturl.at/RaxS8 ............................................................................3

ORR, *Unaccompanied Alien Children Bureau Fact Sheet* (March 7,
2025), https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet ..............................3

S. Rep. 118-84 .....................................................................................................5, 21

## Regulations

45 C.F.R. § 410.1309..................................................................................5, 16, 18

89 Fed. Reg. 34384(April 30, 2024)....................................................................3, 4

**INTRODUCTION**

Unaccompanied children—in the United States without a parent or guardian—have little hope of navigating the immigration system without a lawyer. Recognizing their unique vulnerability, Congress has mandated the government provide legal representation for unaccompanied children and consistently appropriated funds for that purpose. Despite congressionally appropriated funding being available, Defendant-Appellant agencies ("Defendants") chose to summarily terminate legal representation for unaccompanied children, violating governing law and causing unaccompanied children and the organizations that serve them irreparable injury. The district court recognized this and enjoined Defendants from withdrawing funds or services required by statute and regulation, including "funds for direct legal representation services to unaccompanied children."

Defendants now seek the extraordinary relief of a stay pending appeal purportedly based on an emergency, with no evidence supporting their alleged need. Defendants inexplicably delayed filing the present "emergency" motion, filing a notice of appeal one day after the district court entered a preliminary injunction ("PI") on April 29, but waiting another five days to file this "emergency" motion. Now, without evidence, Defendants claim the PI imposes harm so severe it merits an emergency stay. Emergency stays are extraordinary relief never granted as a matter of right, and Defendants cannot seek such relief as a matter of convenience.

1

For a stay to issue, appellants must establish that they face irreparable harm absent a stay, that they are likely to succeed on the merits, and that the equitable factors of harm to the opposing party and public interests weigh in their favor. Defendants have established none of these factors and, foundationally, cannot make their threshold showing of irreparable harm. Defendants must prove irreparable harm, a question of fact, with evidence. But Defendants rely only on argument and inapplicable caselaw, without even bothering to submit an administrative record below. In contrast, Plaintiffs (the "Providers") present abundant evidence establishing the irreparable harm that would result *without* the PI. The record on appeal can only support denying Defendants' motion and leaving the PI in place while the appeal proceeds in the ordinary course.

Even if Defendants could survive the threshold irreparable harm requirement, their remaining arguments (rejected by the district court) do not justify an emergency stay. Defendants' argument that this is a contract case that must be brought in the Court of Federal Claims fails under prevailing, undisturbed caselaw. Because the relevant statute (the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA")) and relevant regulation (the Office of Refugee Resettlement's ("ORR") Foundational Rule) set reviewable standards, Defendants do not have unreviewable discretion. Finally, equitable factors favor maintaining the PI. The Court should deny the

2

motion.

## BACKGROUND

### A. Congress Directed HHS to Fund Counsel for Unaccompanied Children.

In FY 2024 alone, nearly 100,000 new children were identified as unaccompanied children ("UCs") after arriving in the country without a parent or legal guardian. ORR, *Unaccompanied Alien Children Bureau Fact Sheet* (March 7, 2025), https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet. The government has recognized that UCs are uniquely vulnerable to trafficking, abuse, and injustices in the immigration system. *See* ORR, About the Unaccompanied Alien Children Bureau (Apr. 23, 2025), https://shorturl.at/RaxS8. Consequently, Congress, through the TVPRA, provides unaccompanied children special legal rights. *See, e.g.*, 8 U.S.C. § 1232(a)(5)(D). But their rights are meaningless without tools to exercise them, including legal counsel. 89 Fed. Reg. 34384, 34529 (Apr. 30, 2024).

In the Homeland Security Act of 2002, Congress gave Department of Health and Human Services ("HHS") and ORR custody of UCs and commanded they "develop[] a plan . . . to ensure that qualified and independent legal counsel is timely appointed to represent the interests of each such [unaccompanied] child." 6 U.S.C. § 279(b)(1)(A). ORR developed a pilot program to meet UCs' legal needs through pro bono legal services. The pilot concluded that volunteer attorneys alone were insufficient to meet UCs' representation needs and paid attorneys were necessary.

3

*See* Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children Through the Immigration System*, at 22–23 (March 2012), https://shorturl.at/KI3Jt. This spurred Congress to impose additional representation-related requirements on ORR and HHS through the TVPRA.

Recognizing the limitations of volunteer attorneys, Congress has required the government to provide direct legal representation services to unaccompanied children and has appropriated funds for these services since 2009. The TVPRA, passed in 2008 and consistently reauthorized with bipartisan support (most recently in 2023), mandates that HHS must provide counsel for UCs: "The Secretary of [HHS] *shall ensure*, to the greatest extent practicable . . . that all [UC] who are or have been in the custody of the Secretary or the Secretary of Homeland Security . . . have counsel to represent them in legal proceedings or matters." 8 U.S.C. §1232(c)(5) (emphasis added). Defendants have violated this mandate.

## B. ORR's Regulations Require Funding for Legal Services for UCs Consistent with Available Appropriations.

ORR has recognized "that most unaccompanied children need legal services to resolve their immigration status," affirmed the importance of legal representation, and identified a goal of 100% representation for UCs. Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34384, 34526, 34529 (April 30, 2024). To comply with the TVPRA and the Immigration and Nationality Act ("INA"), the Foundational Rule recognizes ORR must "ensure that all unaccompanied children

4

who are or have been in ORR care have access to counsel" and commands that, "[t]o the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel, ORR shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations."  45 C.F.R. § 410.1309(a)(4), (d).

Appropriations are available.  On March 23, 2024, Congress passed the Further Consolidated Appropriations Act of 2024, specifically appropriating funds through September 30, 2026, "for carrying out" section 235 of the TVPRA.  Pub. L. 118-47 138 Stat. 460, 664 (2024).  The Senate Appropriations Committee Report restated the TVPRA's mandate: "The Committee also expects these funds will be used to provide access to counsel, consistent with the goals of the [TVPRA] for all children to have access to counsel in their immigration proceedings."  S. Rep. 118-84, at 167.  On March 15, 2025, Congress continued this funding through September 30, 2027.  Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, div. A, tit. I, § 1101(8).  Defendants satisfied this obligation by contracting with Acacia Center for Justice ("Acacia"), which sub-contracted with organizations like Providers to provide legal representation for UCs.  *See, e.g.*, Dkt. 7-15 ¶¶ 3–4 ("Amica Decl.").[1]

---

[1] Docket entries from the district court are cited as "Dkt. XX."

**C. Defendants Terminated Funding for Legal Representation for UCs.**

On March 21, 2025, the Department of the Interior sent a "Notice of Partial Termination for the Government's Convenience" to Acacia. The notice announced Defendants were terminating funding for legal representation for UCs that day and commanded Providers to "immediately stop work" on any active representations and stop taking on new engagements. Dkt. 7-10 ¶ 10 ("NWIRP Decl."); Dkt. 7-7 ¶ 13 ("VAAP Decl."). It provided no explanation for the termination or guidance on how to handle existing representations, including those with imminent court hearings. *See* VAAP Decl. ¶¶ 12, 13, 21; NWIRP Decl. ¶¶ 9,11; Dkt. 7-11 ¶ 19 ("RMIAN Decl."); Dkt. 7-14 ¶¶ 13, 16 ("Estrella Decl.").

The termination has had devastating, irreparable effects on Providers' mission-driven work to represent unaccompanied children. Estrella Decl.¶ 7. For example, on April 4, 2025, an ORR shelter asked Plaintiff Estrella del Paso if they could represent a UC. Dkt. 40-2 ¶ 4 ("Estrella Supp. Decl."). Because Defendants had not complied with the TRO, Estrella was unable to provide legal representation, and the child was removed days later without counsel. *Id.* ¶¶ 6, 9. Further, absent the PI, Providers will be forced to engage in mass staff terminations, *see, e.g.*, Dkt. 37 at 31 ("PI Mot.") (describing impending layoffs and budget shortfalls), further frustrating their ability to represent the UCs they are committed to serve—including those with claims to lawful immigration status and no practicable alternative

counsel.

### D. The District Court Preliminarily Enjoined the Termination.

On March 26, 2025, Providers filed this lawsuit, seeking declaratory and injunctive relief preventing Defendants from "ceas[ing] to fund counsel to represent [UCs]" and seeking a temporary restraining order ("TRO"). Dkt. 1 at 39 ("Compl."); Dkt. 7 ("TRO Mot."). The district court issued a TRO, enjoining Defendants from withdrawing services or funds for UC legal representation until April 16, 2025. Dkt. 33 at 7 ("TRO"). The district court also set an expedited briefing schedule for Providers' motion for a PI, *id.*, which Providers filed on April 4, 2025. PI Mot.

Instead of complying with the TRO, Defendants filed a series of motions repeating arguments the district court already rejected. Each motion was denied. *See* Dkt. 66 at 10–11 (discussing Defendants' motion to dissolve the TRO, motion to recuse, and notice of appeal). The district court extended the TRO once for "good cause." Dkt. 48. Defendants did not restore funding until April 30, the day the TRO expired. Dkt. 91.

The district court heard Providers' PI motion on April 23, 2025, and granted it on April 29, 2025. Dkt. 87 ("PI Order"). Defendants noticed this appeal on April 30, 2025. Dkt. 88.

### STANDARD

Courts consider four factors when considering a request to stay a district

7

court's injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Courts first require the appellant to make "a certain threshold showing regarding irreparable harm." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). Even with this showing, an emergency stay is an extraordinary remedy never granted as a matter of right. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020). Defendants cannot make the threshold showing; each factor favors Providers and supports denial of Defendants' motion.

## ARGUMENT

Defendants cannot justify the extraordinary relief they seek, and do not even attempt to make the requisite factual showing of genuine irreparable harm. This Court should deny the motion on that basis alone. If it reaches the other factors, the stay should likewise be denied.

### A. Defendants Have Not Made the Required Threshold Showing of Irreparable Harm to Justify an Immediate Stay.

"[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965. Defendants bear

the burden of showing irreparable harm absent a stay. *Doe #1 v. Trump*, 957 F.3d 1050, 1058–59 (9th Cir. 2020).

Irreparable harm is a question of fact; to support such a claim, a party must submit evidence showing irreparable harm is likely to occur. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013); *Cf. Al Otro Lado*, 952 F.3d at 1007 (government failed to meet its irreparable harm burden because its evidence was "weak" and based on "assumptions"). Defendants submit *no* evidence supporting their claim of irreparable harm, citing only a fact-bound conclusion in a different case. ECF No. 5.1 at 22–23. Accordingly, both Defendants' lack of urgency in filing the present motion and the record evidence (and the district court's findings) shows that, in the absence of the PI, *only Providers* will suffer irreparable harm if the injunction is stayed. PI Order at 25; *see also* TRO at 5–6 (finding Defendants will suffer no harm from a TRO).

Defendants' unsupported assertions of harm cannot make their threshold showing. First, Defendants assert they are harmed by disbursing congressionally appropriated funds. *See* ECF No. 5.1 at 21–22. That statement refutes itself: spending money as required by congressional appropriation executes the law; the government cannot be "harmed" by following the law. The government suffers no irreparable harm from disbursing funds Congress appropriated for a specific function. *See, e.g.*, *Rhode Island v. Trump*, 2025 WL 1303868, at *17 (D.R.I. May

9

6, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 2025 WL 1116157, at *23 (D.R.I. Apr. 15, 2025); *Maine v. U.S. Dep't of Agric.*, 2025 WL 1088946, at *29 (D. Me. Apr. 11, 2025). The government cannot save or use this money for another purpose, it must "be applied only to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). Payment cannot harm the government, as the appropriations process exists "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good." *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016).

Second, Defendants assert the injunction harms the "separation of powers" because, "*[w]henever* a district court issues a universal injunction against the Executive Branch, the United States suffers a form of irreparable harm." ECF No. 5.1 at 21; *see also* PI Order at 26. Defendants cite no authority for that proposition because it defies law and logic—the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). It is Plaintiffs who seek to protect the public interest and the separation of powers by ensuring congressional appropriations are being utilized as directed by Congress.

Third, Defendants say the district court's injunction harms "sovereign interests" because it is an "unwarranted judicial interference in the conduct of foreign policy." ECF No. 5.1 at 22 (citing *Kiobel v. Royal Dutch Petrol.*, 569 U.S.

10

108, 116 (2013) (holding the Alien Tort Statute did not apply extraterritorially)). Defendants never raised this argument below and it should not be considered here. *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780–81 (9th Cir. 2014) ("Generally, arguments not raised in the district court will not be considered for the first time on appeal.") (listing cases). It is also unfounded. This case does not involve any foreign-policy power. Instead, it involves Defendants' authority to terminate funds appropriated by Congress for legal services for children *within the U.S.* navigating the *American legal system*—not foreign policy or border enforcement. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542–43 (1950) (distinguishing border exclusion from the removal of persons in the United States); *Nat'l Ass'n of Mfrs. v. U.S. Dep't of Homeland Sec.*, 491 F. Supp. 3d 549, 562–63 (N.D. Cal. 2020) (a "purely domestic" immigration issue does not implicate the executive's foreign affairs powers). As this Court recognized, while a genuine foreign policy issue is exempt from the APA, that exemption does not extend to all immigration-related policies. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 676–77 (9th Cir. 2021).

With nothing but bare assertions unsupported by caselaw and no record evidence supporting their assertions, Defendants have not met their burden to show irreparable harm. This Court should not issue a stay.

**B. Defendants Cannot Satisfy the Remaining Requirements for An Immediate Stay.**

Even if Defendants had made the requisite threshold showing of harm, they cannot satisfy the remaining factors necessary for a stay.

     **i.**    **Defendants Are Unlikely to Succeed on the Merits**

        **a) The District Court Properly Exercised Jurisdiction Over Plaintiffs' Claims.**

Providers bring *bona fide* APA claims, not contract claims, and the district court properly exercised its jurisdiction. The Tucker Act deprives district courts of jurisdiction over APA claims only if the claims: (1) are founded upon contract-based rights *and* (2) seek a contract-based remedy. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025–26 (9th Cir. 2023). Where a plaintiff "does not claim a breach of contract," and seeks neither monetary damages nor specific performance, there is no contract claim. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968–70 (D.C. Cir. 1982). "[T]hat a court may have to rule on a contract issue" does not "automatically transform the action" or deprive the court of jurisdiction. *Id*. at 968; *see also United Aeronautical*, 80 F.4th at 1026.

Providers do not seek to enforce any contractual obligation. Their claims stem from Defendants' violations of the TVPRA and Foundational Rule through their termination of funding for UC legal representation without reasoning or practicable alternatives. *See* Compl. ¶¶ 96, 143; PI Mot. at 12.

Defendants' argument hinges on Acacia's government contract to provide

services to unaccompanied children. But the *existence* of a contract has never sufficed to funnel claims challenging unlawful agency action under the APA into the Tucker Act. *Megapulse, Inc.*, 672 F.2d at 968–70. Contrary to Defendants' assertions, this lawsuit does not depend on any contract. Providers have explained Defendants could meet their obligations under the TVPRA and Foundational Rule by contracting with other organizations—or without contracting at all. *See* Tr. 12:9–14:16, April 23, 2025. Defendants chose a contract as the vehicle to comply with the district court's orders, but it is not the only vehicle, and it is not the basis of Providers' claims. *See United Aeronautical*, 80 F.4th at 1026; *Megapulse, Inc.*, 672 F.2d at 968.

Providers do not seek contract-based remedies or "monetary relief." ECF No. 5.1 at 12. Providers seek "declaratory and injunctive relief" to prevent Defendants from unlawfully refusing to fund counsel for UCs. *See, e.g.*, Compl. ¶¶ 15–16; TRO Mot. at 11; PI Mot. at 12. Because Providers do not seek "money in compensation for . . . losses," the Tucker Act does not apply. *Bowen v. Massachusetts*, 487 U.S. 879, 893, 895 (1988); *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022) (declaratory and injunctive relief are not "specific to actions that sound in contract").

The nature of Providers' claims is reflected in the district court's remedy. Contrary to Defendants' representation, the district court did not "require[] HHS to

continue providing 'funds for direct legal representation services to [UCs]' through ORR's contractor, Acacia." ECF No. 5.1 at 12. The district court enjoined Defendants from "withdrawing the *services or funds* provided by [ORR] as of March 20, 2025, under [the TVPRA and Foundational Rule], particularly ORR's provision of funds for direct legal representation services to unaccompanied children." PI Order at 28 (emphasis added). The district court did not rely on Defendants' contract with Acacia, nor have Providers asked it to consider the contract. Defendants' *choice* to comply with the court's orders by contracting does not strip the court of jurisdiction over Providers' claims. *See Megapulse, Inc.*, 672 F.2d at 968–70.

Defendants insist the Supreme Court's order in *Department of Education* "significant[ly] changes" the law. Dkt. 38 at 1. It does not. The short, fact-specific discussion in *Department of Education* leaves undisturbed a long line of binding precedent that federal court "jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting *Bowen*, 487 U.S. at 910).

The district court also correctly distinguished *Department of Education* on the facts. Those plaintiffs sued for payment of government grants, meaning requested relief was "to enforce a contractual obligation to pay money" on contracts and "require[d] the Government to pay out past-due grant obligations." *Id.* at 968.

14

Providers "have no contractual rights to enforce," and do not seek "contractual relief." PI Order at 15. Providers seek injunctive, forward-looking relief that Defendants comply with the TVPRA and Foundational Rule; Defendants simply are choosing to meet that obligation by contracting. The Supreme Court also held there was no irreparable harm to state plaintiffs because they "have the financial wherewithal to keep their programs running" without the grants. *Dep't of Educ.*, 145 S. Ct. at 969. Providers' harm is more urgent because they do not have the "financial wherewithal to keep their programs running" absent injunctive relief—they face an existential threat. *See, e.g.*, *id.*; *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *23; PI Mot. at 31–32.

### b) Defendants' Violations of Statutory and Regulatory Commands Are Reviewable Under the APA.

This case turns on the TVPRA and the Foundational Rule. Providers argue, under the plain text of the statute and regulation, that although Defendants have some discretion in how and when to spend appropriated funds to secure counsel for UCs, Defendants violate the law if they arbitrarily decide to cut funding altogether. Defendants disagree, contending the statutes grant the agency complete discretion. Who is correct is a legal question of statutory and regulatory construction, perfect for APA review.

Agency action is unreviewable only in "rare circumstances" where a court has "no meaningful standard against which to judge the agency's exercise of discretion."

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018). Even broad discretion does "not render the agency's decisions completely nonreviewable." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985); *see also Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019); PI Mot. at 20–21. Rather, a court has jurisdiction unless "there is truly no law to apply." *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1014 (9th Cir. 2024). Indeed, "courts routinely treat discretion-laden standards as providing 'law to apply.'" *Id.* at 1017. And courts are commanded to "resol[ve] statutory ambiguities" to "police the outer statutory boundaries" of agency discretion. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373–74, 403–04 (2024).

Under the TVPRA, Defendants "shall ensure, to the greatest extent practicable," that unaccompanied children receive legal representation to "protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. § 1232(c)(5). ORR got the message, confirming that "ORR shall fund legal service providers to provide direct immigration legal representation" for UCs when appropriations are available and pro bono counsel is not sufficient. 45 C.F.R. § 410.1309(a)(4). What Defendants dismiss as merely "aspirational" and too insubstantial for appellate review, ECF No. 5.1 at 16, is more than enough to confine the executive's discretion because the law provides clear standards for judicial review of ORR's discretion: whether the agency has ensured direct representation of UCs to the greatest degree

16

it is capable.

At the time of the TVPRA's passage in 2008 (and now), "practicable" meant "capable of being put into practice or of being done or accomplished; feasible." Merriam-Webster's Collegiate Dictionary 974 (11th ed. 2008). "Extent" was defined as "the point, degree, or limit to which something extends." *Id.* at 443. Finally, "shall is a mandatory term" that imposes on HHS a mandatory duty. *Jajati*, 102 F.4th at 1018. The ordinary meaning of Section 1232(c)(5) is that HHS must, to the greatest degree feasible, "ensure" that all UCs "have counsel to represent them." 8 U.S.C. § 1232(c)(5). Defendants' attempt to invert the statute's meaning disregards the TVPRA's plain text and ignores the rule of statutory interpretation counseling courts to give effect to every word. *See United States v. Watkins*, 278 F.3d 961, 966 (9th Cir. 2002). And Defendants' attempt to shield themselves from judicial oversight contradicts the Supreme Court's command that courts should "ensure that agencies exercise their discretion consistent with the APA" and not allow invocations of discretion to "prevent[] them from judging." *Loper Bright*, 603 U.S. at 404 (2024).

The TVPRA provides a meaningful standard for judicial review. *See City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (statutory requirement that an agency Secretary "shall" act "if he considers it feasible" provided a meaningful standard for review); *see also Perez Perez*, 943 F.3d at 862

17

(listing cases).  The TVPRA grants Defendants some discretion, but not discretion to completely cut off funding.  Canceling funding for direct representation of UCs altogether, when appropriations are available, without providing any other avenues of legal services for UCs, violates an express mandate and is reviewable under a meaningful standard provided by Congress.

Defendants argue the Foundational Rule proves direct representation is "entirely subject to agency discretion."  ECF No. 5.1 at 18.  But they cannot ignore congressional instructions or read into the enacting regulation a level of discretion that makes their actions unreviewable.  The Foundational Rule says, "ORR *shall* fund legal service providers" "[t]o the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel." 45 C.F.R. § 410.1309(a)(4) (emphasis added).  The text mandates funding, and ORR is capable of distinguishing between mandatory and optional funding obligations.  *Compare* 45 C.F.R. § 410.1309(a)(4) ("shall fund" direct representation), *with id.* § 410.1309(b)(2) ("may fund" representation in non-immigration matters).  Providers agree it does not "unconditionally require" funding of legal representation in all cases.  *See* PI Mot. at 21–22; TRO Mot. at 20–21, 24.

Defendants do not have unreviewable discretion, as they concede below.  *See* Dkt. 55 at 22 ("Defs' PI Opp") ("Funding is required *insofar that it is not practicable for ORR to secure pro bono counsel*.").  ORR's regulations require it to provide

18

funding for direct representation to the maximum extent it is able as long as (1) funding is appropriated, and (2) pro bono counsel cannot be secured for UCs. This interpretation of the Foundational Rule aligns with former HHS officials' longstanding understanding of ORR's TVPRA obligations. Dkt. 49-1 at 7 ("Former HHS Official Amicus Br."). Defendants provide no evidence pro bono services, alone, can meet the TVPRA's mandate—all evidence indicates they cannot. *Id.* at 8–10. Thus, under the Foundational Rule, funding of direct representation is currently mandated. Even if the Foundational Rule supported wholesale discretion under the TVPRA, a court would not be bound by such interpretation because "[t]he interpretation of the meaning of statutes [is] exclusively a judicial function." *Loper Bright*, 603 U.S. at 387 (cleaned up). Defendants' arguments claiming complete discretion fail.

Defendants raise Section 1232(c)(5)'s incorporation of INA Section 1362 as proof of its discretion and lack of obligation to fund representation. ECF No. 5.1 at 16. While Providers agree the TVPRA does not require the government to fund counsel for *all* UCs or for all noncitizens in removal proceedings, which is what Section 1362 addresses, the text mandates funding for some level of representation. Defendants further misread Section 1362, which concerns a right to counsel in civil immigration proceedings, claiming the parenthetical qualifying the right to counsel is "at no expense to the Government" precludes any reading of the agency's

19

obligation to fund representation. *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007); ECF No. 5.1 at 16. As the district court recognized, the parenthetical only clarifies that *Gideon v. Wainwright* does not extend to immigration proceedings. 372 U.S. 335, 344 (1963). There is no dispute the TVPRA does not mandate government-funded counsel for every UC; Section 1362 is compatible with the requirement to fund direct representation "to the greatest extent practicable" and does not grant Defendants unreviewable discretion.

Defendants argue this case involves "lump-sum appropriations," relying on *Lincoln v. Vigil*. ECF No. 5.1 at 18–19. But *Lincoln* highlights what makes this case well-suited for judicial review: Congress has provided commands in statutory language and appropriations. In *Lincoln*, the appropriations acts did not "mention the [cancelled] [p]rogram," the relevant statutes spoke "about [the program's focus] only in general terms," and "Congress never expressly appropriated funds" for the cancelled program. 508 U.S. 182, 186, 193–94 (1993); *see also* PI Mot. at 20. Instead, the agency received a lump-sum appropriation to provide healthcare for American Indian and Alaska Native people, without statutory restrictions. *Lincoln*, 508 U.S. at 185. By contrast, the TVPRA mandates direct legal representation, and Congress has appropriated funds for services required under the TVPRA (explicitly including representation). *See, e.g.*, Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, Div. A Tit. I Sec. 1101(8); Further

Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–65; S. Rep. 118-84, at 167.  Unlike the claims in *Lincoln*, Providers' claims are not premised on Defendants' failure to disburse appropriated funds—but on Defendants' violation of the TVPRA and Foundational Rule.

### ii.  The Equitable Factors Do Not Favor A Stay.

Because Defendants have not "satisfie[d] the first two factors," the Court need not reach the equitable factors of "harm to the opposing party and . . . the public interest."  *Nken*, 556 U.S. at 435.  Regardless, these factors weigh heavily in Providers' favor.

The district court correctly found, based on an extensive factual record, that Providers "have shown that they are likely to suffer, if not already suffering, irreparable harm in the absence of preliminary relief."  PI Order at 25.  Defendants' argument that "the only 'risk' [Providers] identify [is] that they might lose staff or expertise" misstates the district court's order and the evidence.  ECF No. 5.1 at 23. As the district court found, Providers "established a likelihood of irreparable harm based on their showing of serious ongoing harms to their organizational missions." PI Order at 25.  Providers' harms are rooted in frustration of their missions to support unaccompanied children, many of whom, absent legal support, will face prolonged detention or removal proceedings alone.  The impact of these harms on Providers and their clients goes far beyond the loss of staff or expertise.  *See generally, e.g.,*

TRO Mot.; PI Mot.; Mots. to Enforce; Dkt. 84 ("Reply ISO PI").

The public interest also weighs heavily against a stay. "[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *State v. Azar*, 385 F. Supp. 3d 960, 985 (N.D. Cal. 2019), *vacated on other grounds and remanded sub nom. California ex rel. Becerra v. Azar*, 950 F.3d 1067 (9th Cir. 2020). Enjoining Defendants from violating the TVPRA and Foundational Rule furthers that interest. PI Order at 26. The district court also found maintaining funding for direct representation of UCs furthers "critical public interests" by "ensuring children have access to legal representation and protection from human trafficking" and by "promot[ing] efficiency and fairness within the immigration system." TRO at 6 (citing generally Dkt. 28 ("Former IJ & BIA Member Amicus Br.")); *see also* PI Order at 26. Further, the public interest favors ensuring that individuals are not wrongfully removed. *Nken*, 556 U.S. at 436. Providing UCs with representation furthers that interest.

Defendants' attacks on the district court judge do not change this analysis. Defendants identify no evidence of partiality beyond their denied recusal motion, which Defendants brought after the TRO was entered and based on the judge's employment nearly seven years ago and experience as co-counsel with attorneys representing Providers. Dkt. 69 at 5–6. This litigation tactic remains unavailing.

Providers have established that a stay will cause them irreparable harm.

Because there is no public interest in upholding unlawful agency action and there is significant public interest in maintaining funding for representation of unaccompanied children, the balance of the equities and public interest "both tip decisively in [Appellees'] favor." PI Order at 26.

## CONCLUSION

Defendants cannot meet the factors for a stay pending appeal. This Court should deny the motion.

Dated: May 9, 2025                                  Respectfully submitted,

*/s/ Katherine Marquart*                            */s/ Alvaro M. Huerta*
GIBSON DUNN & CRUTCHER LLP                          IMMIGRANT DEFENDERS LAW
                                                    CENTER
Katherine Marquart (CA Bar No.
248043)                                             Alvaro M. Huerta (CA Bar No. 274787)
Ariana Sañudo (CA Bar No. 324361)                   Carson A. Scott (CA Bar No. 337102)
Arthur M. Halliday (CA Bar No.                      Lya Ferreyra (CA Bar No. 340148)
347620)                                             Immigrant Defenders Law Center
Gibson, Dunn & Crutcher LLP                         634 S. Spring St., 10th Floor
333 South Grand Avenue                              Los Angeles, CA 90014
Los Angeles, CA 90071-3197                          (213) 634-0999
(213) 229-7000                                      ahuerta@immdef.org
kmarquart@gibsondunn.com                            cscott@immdef.org
asanudo@gibsondunn.com                              lferreyra@immdef.org
ahalliday@gibsondunn.com

Monica K. Loseman (CO Bar. No.
34119)
Laura Sturges (CO Bar No. 36843)
Patricia M. Herold (CO Bar No. 54552)
Caelin Moriarity Miltko (CO Bar No.
56721)
Gibson, Dunn & Crutcher LLP
1900 Lawrence Street, Suite 3000

Denver, CO 80202-2211
(303) 298-5700
mloseman@gibsondunn.com
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

Richard W. Mark (NY Bar No. 1705292)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193
(212) 351-4000
rmark@gibsondunn.com

*/s/ Esther H. Sung*

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

*/s/ Adina Appelbaum*

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (VA Bar No. 88974)
Samantha Hsieh (VA Bar No. 90800)
Peter Alfredson (DC Bar No. 1780258)
Evan Benz (NC Bar No. 49077)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Ninth Circuit Rule 5-2 and 32-3(2) because it contains 5,189 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 5(c) and 32(f).

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface of 14 points in Times New Roman font.

Dated: May 9, 2025                                  Respectfully submitted,

*/s/ Katherine Marquart*                            */s/ Alvaro M. Huerta*
GIBSON DUNN & CRUTCHER LLP                          IMMIGRANT DEFENDERS LAW
                                                    CENTER

Katherine Marquart (CA Bar No.                      Alvaro M. Huerta (CA Bar No. 274787)
248043)                                             Carson A. Scott (CA Bar No. 337102)
Ariana Sañudo (CA Bar No. 324361)                   Lya Ferreyra (CA Bar No. 340148)
Arthur M. Halliday (CA Bar No.                      Immigrant Defenders Law Center
347620)                                             634 S. Spring St., 10th Floor
Gibson, Dunn & Crutcher LLP                          Los Angeles, CA 90014
333 South Grand Avenue                              (213) 634-0999
Los Angeles, CA 90071-3197                          ahuerta@immdef.org
(213) 229-7000                                      cscott@immdef.org
kmarquart@gibsondunn.com                            lferreyra@immdef.org
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Monica K. Loseman (CO Bar. No.
34119)
Laura Sturges (CO Bar No. 36843)
Patricia M. Herold (CO Bar No. 54552)

Caelin Moriarity Miltko (CO Bar No. 56721)
Gibson, Dunn & Crutcher LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
mloseman@gibsondunn.com
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

Richard W. Mark (NY Bar No. 1705292)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193
(212) 351-4000
rmark@gibsondunn.com

*/s/ Esther H. Sung*

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

*/s/ Adina Appelbaum*

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (VA Bar No. 88974)
Samantha Hsieh (VA Bar No. 90800)
Peter Alfredson (DC Bar No. 1780258)
Evan Benz (NC Bar No. 49077)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs-Appellees*

26