No. 25-2808

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**COMMUNITY LEGAL SERVICES IN EAST PALO ALTO**, et al.
Plaintiffs-Appellees,

v.

**UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES**, et al.
Defendants-Appellants.

On Appeal from the U.S. District Court for the Northern District of California
District Court Case No. 3:25-cv-02847

**DEFENDANTS' REPLY IN SUPPORT OF
EMERGENCY MOTION PURSUANT TO CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL**

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

JONATHAN K. ROSS
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7662
Jonathan.K.Ross@usdoj.gov

CHRISTINA PARASCANDOLA
KATELYN MASETTA ALVAREZ
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

Attorneys for Defendants-Appellants

## INTRODUCTION

The governing regulation provides that the Department of Health and Human Services ("HHS") has "discretion" on whether to fund certain legal services, even when there are "available appropriations" to pay for those services. 45 C.F.R. § 410.1309(a)(4). HHS exercised that "discretion" here by partially terminating a contract under which Plaintiffs received payment for providing those services. Yet the district court compelled the government to fund discretionary awards long after the agency lawfully terminated them. And it did so at the behest of parties with no *statutory* or *regulatory* right to funding—only a *contractual* interest. But as the Supreme Court recently reiterated, plaintiffs who are dissatisfied with termination of their awards must take that up with the Court of Federal Claims. *See Dep't of Educ. v. California*, 145 S.Ct. 966, 968 (2025). And as ten members of this Court recognized at an earlier stage of these proceedings, that means the district court lacked jurisdiction here. *See Cmty. Legal Servs. in E. Palo Alto ("CLSEPA") v. HHS*, No. 25-2358, --- F.4th ----, 2025 WL 1203167, at *1 (9th Cir. Apr. 25, 2025) (dissenting op.). As a matter of both jurisdiction and the merits, this injunction is thus legally indefensible.

In their response, Plaintiffs insist the district court had jurisdiction because they invoked the statute and regulations, not any contract. But nothing in the statute or regulation entitles Plaintiffs to funding. It was only the contract that gave them

1

standing, and it was only the termination of the contract that ostensibly caused irreparable harm. While Plaintiffs may contend that termination of the contract violated the law, that remains a *contractual* dispute for which they sought a *contractual* remedy—reinstatement of the contract. It therefore belonged in the Court of Federal Claims under the Tucker Act, not in the district court under the Administrative Procedure Act ("APA").

In all events, Plaintiffs are manifestly wrong on the merits. The statute only calls on HHS to help ensure that unaccompanied minors *have* counsel—not that the government must *pay* for it. 8 U.S.C. § 1232(c)(5). And the regulation, as noted, expressly clarifies that government-funded counsel is contingent on *both* "available appropriations" *and* HHS's "discretion." 45 C.F.R. § 410.1309(a)(4). Plaintiffs do not contend that the regulation runs afoul of the statute—but have no explanation for how a wholly *discretionary* power can support judicial review.

Turning to the equities, the injunction transforms an expired government contract into a vehicle for court-ordered spending, compelling federal funds to flow in precisely the manner the Executive Branch determined no longer serves the public interest. Even if Congress made funds available, the injunction usurps HHS's power to decide how they are allocated and used. And the government has no way to recoup those funds later, even if it prevails in this appeal. Conversely, Plaintiffs face only

the prospect of *remediable* monetary loss, and can continue to provide their services on a *pro bono* basis (as Congress preferred) or through other funding.

In short, because the district court's injunction is groundless but will impose large, immediate, and irreparable harms on the government, this Court should stay the injunction pending appeal.

## ARGUMENT

### I. The Injunction is Both Jurisdictionally and Legally Baseless.

#### A. The District Court Lacks Jurisdiction

As ten judges of this Court explained, the Supreme Court's decision in *Department of Education* forecloses the district court's assertion of jurisdiction here. *See CLSEPA*, 2025 WL 1203167, at *3; *Dep't of Educ.*, 145 S.Ct. at 968. In particular, *Department of Education* made clear that district courts lack jurisdiction to enforce contractual obligations; such claims must be brought in the Court of Federal Claims under the Tucker Act. *See id.* That principle governs here, because Plaintiffs have no statutory or regulatory entitlement to payment for legal services—they are here only because HHS contracted with the Acacia Center for Justice ("Acacia") to fund certain legal services, and Plaintiffs received funds through that contractual arrangement. HHS's decision to partially terminate the Acacia contract thus presents what amounts to a contractual dispute over contractual rights—just like the award terminations in *Department of Education*.

3

The district court tried to distinguish *Department of Education* on the ground that Plaintiffs (unlike Acacia itself) are "subcontractors lacking privity with the Government." *CLSEPA v. HHS*, No. 25-cv-02847-AMO, ECF 87 at 14–15 (N.D. Cal. Apr. 29, 2025). Tellingly, Plaintiffs offer no defense of that distinction. That is because, as previously explained, it has things exactly backwards: subcontractors generally have *fewer* rights than prime contractors to pursue their rights against the government. App. ECF 5, Government's Stay Mot. 7; *see id*. 7–13. But regardless of whether a plaintiff is a prime contractor or only a subcontractor, its rights remain fundamentally contractual—so relief, to the extent any is available, can only be had in the Court of Federal Claims.

Instead of defending the district court's plainly erroneous rationale, Plaintiffs half-heartedly press a "magic words" test: they claim that the district court did not adjudicate a contract dispute because it did not explicitly reference the specific Acacia contract in its decision. App. ECF 11, Plaintiffs' Opp'n 20. But under established precedent, the determining factor is not whether the district court or Plaintiffs invoke the word "contract" or analyze the parties' agreement, but rather the "source" of the plaintiff's rights and the nature of the relief sought. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025–26 (9th Cir. 2023) (citing *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967–68 (D.C. Cir. 1982)); *cf. Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77–78 (D.C. Cir. 1985) ("That [the]

4

complaint nowhere mentions breach of contract, therefore, cannot alone suffice to establish jurisdiction in the District Court."). "[I]f rights and remedies are *contractually* based then only the Court of Federal Claims [has jurisdiction to review the claims], even if the plaintiff formally seeks injunctive relief." *United Aeronautical Corp.*, 80 F.4th at 1026. Again, that is what the Supreme Court just reiterated. *See Dep't of Educ.*, 145 S.Ct. at 968.

Here, both the rights and the remedies are contractual. Plaintiffs' only rights to funding arise from the Acacia contract. Plaintiffs say they will suffer pocketbook harms if the government is allowed to terminate its contract with Acacia. They do not claim—and could not claim—that either 8 U.S.C. § 1232(c)(5) ("TVPRA") or HHS's Foundational Rule entitle them to any funds. Put another way, Plaintiffs have no rights that "exist prior to and apart from rights created under the contract." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022). If HHS had not contracted with Acacia, Plaintiffs would have never received funding and would have no basis to sue. As for the remedies sought, Plaintiffs have from the outset challenged HHS's partial termination of the Acacia contract. *See* Dist. ECF 1, Compl. ¶ 12 ("The Cancellation Order flies in the face of the TVPRA and the Foundational Rule."); *id.* ¶ 37 ("Defendants' Cancellation Order severely limits [Plaintiffs] in performing their respective missions …."); *id.* ¶ 131; *id.* ¶ 143. No matter how Plaintiffs try to circumvent the Tucker Act's jurisdictional limitations,

5

their claims entail reversing the Cancellation Order and reinstating the Acacia contract—effectively, specific performance.

In a bid to circumvent the Tucker Act, Plaintiffs now suggest that HHS could fulfill its "obligations" by contracting with other organizations instead of Acacia, or perhaps by working to ensure that *pro bono* counsel is available. Opp'n 19. But that was not Plaintiffs' position below. For example, in moving to enforce the temporary restraining order, Plaintiffs complained that the government had not complied with the temporary restraining order ("TRO") because Acacia received an email requesting to "close out the contract." Dist. ECF 53 at 4. If Plaintiffs' requested (and granted) relief did not require HHS to reinstitute its contract with Acacia, there would have been no basis to argue that closing out that contract constituted a violation of the TRO.

Indeed, Plaintiffs' suggestion that they seek something other than funding is untenable; it contradicts the premise of their lawsuit. Plaintiffs' alleged harm—the foundation for their Article III standing and request for emergency relief—was the loss of funding under the Acacia contract. They could not seek injunctive relief if their claim were only that HHS must provide *some* lawyers for unaccompanied minors, or even that HHS must pay *someone* to provide those services. Their theory has to be that HHS must pay *them*. So while they now claim that "Defendants could meet their obligations under the TVPRA and Foundational Rule by contracting with

6

other organizations—or without contracting at all," Opp'n 19, that would not redress their alleged irreparable harm. *See* Opp'n 21 ("Providers' harm is more urgent because they do not have the 'financial wherewithal to keep their programs running' absent injunctive relief…."). Just as "[a] plaintiff cannot avoid the jurisdictional limitations of the Tucker Act … by artful pleading," *Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004), Plaintiffs cannot use financial distress as a basis for irreparable harm while simultaneously disclaiming any right to receive funds under the relief they request.

At bottom, the core of Plaintiffs' case—as evident from their Complaint, motions to enforce, and their alleged irreparable harm—is the reinstatement of the Acacia contract and continued funding. Accordingly, Plaintiffs' claims sound in contract, meaning the Court of Federal Claims is the only court with jurisdiction.

### B. Committed to Agency Discretion

Even if the court had jurisdiction, HHS possesses discretion to determine whether to allocate appropriated funds to provide legal services for unaccompanied minors. HHS's decision is thus not subject to judicial review; Plaintiffs' claims fail; and the district court's injunction collapses.

Plaintiffs insist that the TVPRA itself requires funding legal services. It does not. It says only that HHS should ensure, "to the greatest extent practicable," that unaccompanied minors *have* counsel. 8 U.S.C. § 1232(c)(5). The statute does not

say that HHS should *pay for* counsel—to the contrary, it specifies that HHS should "make every effort" to utilize "pro bono counsel." *Id.* Nothing about that mandate allows courts to second-guess HHS's decision as to the Acacia contract, or to compel government spending at all. Rather, when the Executive faces "inevitable resource constraints" and "regularly changing" needs, it "must balance many factors," and "[t]hat complicated balancing process in turn leaves courts without meaningful standards for assessing those policies"—even when Congress has used "shall" language to impose a putative mandate. *United States v. Texas*, 599 U.S. 670, 680 (2023); *see also Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993).

HHS implemented the TVPRA through the Foundational Rule, which Plaintiffs do not dispute. They instead emphasize that the rule provides that HHS "shall fund" direct legal services. Opp'n 5. But they ignore that this command is expressly "subject to ORR's discretion *and* available appropriations." 45 C.F.R. § 410.1309(a)(4) (emphasis added). Even when appropriations are available, therefore, the agency retains "discretion" *not* to provide this funding. That language preserves executive discretion and lacks any "judicially manageable standard" by which a court could second-guess the agency's funding decisions. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Indeed, Plaintiffs admit that HHS retains *some* discretion "in how and when to spend appropriated funds to secure counsel for UCs," while insisting that such discretion does not allow ORR to "cut funding altogether."

8

Opp'n 15. But they never explain why, or how they discern that line (or any line) from the regulatory text.

In the end, there is no denying that HHS's decision to terminate funding for direct legal representation was a lawful exercise of its broad discretion under both the TVPRA and the Foundational Rule. Courts have consistently held that such resource allocation decisions are ill-suited for judicial review. Because the decision to fund (or not fund) direct legal representation is committed to agency discretion by law, Plaintiffs' claims are unreviewable. Defendants are therefore likely to prevail on the merits even assuming the district court has jurisdiction.

## II. The Balance of Equities Strongly Favors a Stay

Congress appropriated funds for disbursement at HHS's discretion, and HHS determined in its discretion that its contract with Acacia was not the best use of those funds. The district court's injunction usurped that disbursement authority to itself. Absent a stay, the Executive will be compelled to expend millions of taxpayer dollars for services it does not want to pay for. And, particularly because the district court refused to require any security under Federal Rule 65(c), the government will not be able to recover these funds if it ultimately prevails on the merits. As the Supreme Court recently confirmed, this constitutes irreparable harm. *See Dep't of Educ.*, 145 S.Ct. at 969 (concluding government showed irreparable injury where funds would be unrecoverable if disbursed pending appeal).

Plaintiffs suggest that the government lacks factual support for its claim of irreparable harm. Opp'n 8-10. But the district court's order on its face requires disbursement of funds, and those funds are as a matter of law unrecoverable. There is no necessity for the government to submit a declaration asserting those legal conclusions to provide a "factual" showing of harm.

Plaintiffs further argue that the government suffers no institutional harm "from disbursing funds Congress appropriated for a specific function." Opp'n 9. But Congress appropriated funds for HHS to disburse *in its discretion*, not specifically for legal representation for minors (let alone for those services provided under the Acacia contract). The injunction overrides that discretion, violating the separation of powers. And it does so in an area (removal proceedings) that implicates sensitive foreign-policy responsibilities—hardly a "purely domestic economic issue." *Nat'l Ass'n of Mfrs. v. DHS.*, 491 F. Supp. 3d 549, 562-63 (N.D. Cal. 2020); *see* Opp'n 9.

Once funds are disbursed, they cannot be recovered—and the discretion stripped by the injunction is likewise lost. Without a stay, the government will thus

suffer significant and irreversible financial and institutional harm—harm the Supreme Court explicitly recognized as a justification for emergency relief.[1]

By contrast, Plaintiffs allege primarily financial harms that do not justify injunctive relief. The asserted operational setbacks—such as staff attrition or reduced services—are speculative and do not meet the standard of imminent organizational collapse required to demonstrate irreparable harm. *See Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 734 (N.D. Cal. 2020). Indeed, Plaintiffs' own declarations show that some providers have retained staff, others are pursuing alternate funding, and most remain operational in some capacity. The record reflects adaptation, not devastation. *See, e.g.*, Dist. ECF 37-15 ¶ 3 (Amica has not laid-off staff); ECF 37-14 ¶ 4 (Rocky Mountain pursuing new funding). Anecdotal claims of worst-case scenarios do not support sweeping equitable relief. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013); *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Plaintiffs' mission-based harms fare no better. While they assert that ORR's funding decision "frustrat[es] their missions to support unaccompanied children," Opp'n at 21, Plaintiffs may provide those children as much representation as they

---

[1] The timeline further confirms the need for a stay. The government noticed its appeal the day after the injunction issued and moved for a stay within days—while implementing the injunction as to nearly $150 million in funds.

wish. The government's decision not to *fund* Plaintiffs' activities does not constitute a government-erected *obstacle* to those activities. Indeed, given the statute's express preference for pro bono representation, 8 U.S.C. § 1232(c)(5), Plaintiffs are free to pursue their missions on their own or with the support of private donors.

## CONCLUSION

This Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
KATELYN MASETTA ALVAREZ
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

/s/ *Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7662
Jonathan.K.Ross@usdoj.gov

Attorneys for Defendants-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27 and Circuit Rule 27(d)(2)(c), I certify that foregoing motion complies with the type-volume limitation because it contains 2,593 words. This motion also complies with the typeface and type style requirements because it is proportionately spaced and has a 14-point Times New Roman typeface.

Respectfully submitted,

/s/ *Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
U.S. Department of Justice

Attorney for Defendants-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, counsel for Respondent electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system and that service will be accomplished via the CM/ECF system.

Respectfully submitted,

/s/ *Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
U.S. Department of Justice

Attorney for Defendants-Appellants