No. 25-2808

# In the United States Court of Appeals for the Ninth Circuit

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, ET AL.,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-02857

## BRIEF OF *AMICUS CURIAE*
## CONSTITUTIONAL ACCOUNTABILITY CENTER
## IN OPPOSITION TO DEFENDANTS-APPELLANTS'
## PETITION FOR EN BANC REHEARING

Elizabeth B. Wydra
Brianne J. Gorod
Smita Ghosh
Margaret Hassel
CONSTITUTIONAL
    ACCOUNTABILITY CENTER
1200 18th Street NW, Suite 501
Washington, DC 20036
(202) 296-6889
elizabeth@theusconstitution.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTEREST OF *AMICUS CURIAE* ................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT ................................................................................. 3

I.    As Its Text and History Make Clear, the TVPRA Directs ORR to Ensure Legal Representation for "All" Unaccompanied Children to the Greatest Extent Practicable.............................................. 3

II.    Since Passing the TVPRA, Congress Has Used Appropriations to Increase ORR's Capacity to Provide Legal Representation to Unaccompanied Children ..................................................... 10

III.    ORR's Termination of All Funding for Representation of Unaccompanied Children Is Unlawful ................................... 13

CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Gideon v. Wainwright*,
372 U.S. 335 (1963)............................................................ 14

*Lincoln v. Vigil*,
508 U.S. 182 (1993)............................................................ 13, 17, 18

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)............................................................ 15, 16

*Massachusetts v. EPA*,
549 U.S. 497 (2007)............................................................ 16

*Morales-Izquierdo v. Gonzales*,
477 F.3d 691 (9th Cir. 2007)............................................... 5

*Russello v. United States*,
464 U.S. 16 (1983).............................................................. 5

STATUTES AND LEGISLATIVE MATERIALS

153 Cong. Rec. (daily ed. Dec. 4, 2007)................................. 10

154 Cong. Rec. (daily ed. May 22, 2008)............................... 9, 10

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L.
119-4, 139 Stat. 9 ............................................................... 12

Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138
Stat. 460............................................................................ 1, 10, 12

Homeland Security Act of 2002, Pub. L. No. 107-296,
116 Stat. 2135.................................................................... 2, 7

H.R. Rep. No. 110-430 (2007)................................................ 10

# TABLE OF AUTHORITIES – cont'd

**Page(s)**

H.R. Rep. No. 116-62 (2019)..................................................................... 11

H.R. Rep. No. 116-450 (2020)................................................................... 11

H.R. Rep. No. 117-96 (2021)........................................................... 11, 12, 16

Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 ......................... 7

S. Rep. No. 118-84 (2022) ...................................................................... 3, 12

Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No.
    110-457, 122 Stat. 5044 ....................................................................... 1

5 U.S.C. § 701(a)(2)................................................................................. 15

8 U.S.C. § 1232(c)(5)........................................... 1, 3, 4, 10, 12-14, 16, 18

8 U.S.C. § 1232(c)(6)(A) .......................................................................... 5

8 U.S.C. § 1232(c)(6)............................................................................... 16

8 U.S.C. § 1362...................................................................................... 14

25 U.S.C. § 13 ...................................................................................... 17, 18

25 U.S.C. § 1621(a)(4)(D) ........................................................................ 17

25 U.S.C. § 1621(a)(5)(D) ........................................................................ 17

## BOOKS, ARTICLES, AND OTHER AUTHORITIES

Lauren R. Aronson, *The Tipping Point: The Failure of Form Over
    Substance in Addressing the Needs of Unaccompanied Immigrant
    Children*, 18 Harv. Latino L. Rev. 1 (2015)........................................ 6, 7

**TABLE OF AUTHORITIES – cont'd**

**Page(s)**

Jacqueline Bhabha, Immigr. Pol'y Ctr., *Crossing Borders Alone: The Treatment of Unaccompanied Children in the United States* (2023)...................................................................... 6

Olga Byrne & Elie Miller, Vera Inst. of Just., *The Flow of Unaccompanied Children Through the Immigration System* (2012) ...................................................................... 8

Joyce Koo Dalrymple, *Seeking Asylum Alone: Using the Best Interests of the Child Principle to Protect Unaccompanied Minors*, 26 B.C. Third World L.J. 131 (2006) ...................................................... 8

Christine M. Gordon, *Are Unaccompanied Alien Children Really Getting a Fair Trial – An Overview of Asylum Law and Children*, 33 Denv. J. Int'l L. & Pol'y 641 (2005)................................................ 8, 9

Raya Jarawan, Note, *Young, Illegal, and Unaccompanied: One Step Short of Legal Protection*, 14 Wash. & Lee J. Civ. Rts. & Soc. Just. 125 (2007) ...................................................................... 9

Shani M. King & Nicole Silvestri Hall, *Unaccompanied Minors, Statutory Interpretation, and Due Process*, 108 Calif. L. Rev. 1 (2020) ...................................................................... 4

*Merriam-Webster's Advanced Learner's Dictionary* (1st ed. 2008)....... 4

Jenny Rodriguez, U.S. Comm. for Refugees & Immigrants, *Where We Stand: A 20-Year Retrospective of the Unaccompanied Children's Program in the United States* (2023) ................................................ 9

UNHCR, *Children on the Run: Unaccompanied Children Leaving Central America and Mexico and the Need for International Protection* (2014) ................................................................ 6

Women's Comm'n for Refugee Women & Child., *Prison Guard or Parent?: INS Treatment of Unaccompanied Refugee Children* (2002) ................................................................. 6, 7

## INTEREST OF *AMICUS CURIAE*[1]

Constitutional Accountability Center (CAC) is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works in our courts, through our government, and with legal scholars to improve understanding of the Constitution and preserve the rights, freedoms, and structural safeguards that it guarantees. CAC also has an interest in ensuring that federal statutes, like the Trafficking Victims Protection Reauthorization Act of 2008, are interpreted in a manner consistent with their text and history and accordingly has an interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Responding to the serious problem of unaccompanied children being forced to participate in immigration proceedings without counsel, Congress passed the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) to require that the Office of Refugee Resettlement (ORR) "ensure, to the greatest extent practicable," that immigrant children who are in this country without their parents or guardians have lawyers to represent them in court. Pub. L. No. 110-457, tit. II, § 235(c)(5), 122 Stat. 5044, 5079 (codified at 8 U.S.C. § 1232(c)(5)). Since the TVPRA's passage, Congress has reiterated its commitment to ensuring that

---

[1] No person or entity other than *amicus* and its counsel assisted in or made a monetary contribution to the preparation or submission of this brief. All parties consented to the filing of this brief.

representation by appropriating money each year for ORR to fund legal services providers who represent unaccompanied children. *See, e.g.*, Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 664-65. Notwithstanding this statutory requirement and the funding Congress has provided to help ORR fulfill it, ORR has decided to stop funding those legal services providers. That action is unlawful, and this Court was correct to deny Appellants' request to stay the District Court's injunction.

In 2002, when Congress heard that immigrant children as young as infants were appearing for deportation proceedings without any adult, much less a lawyer, to assist them, it sought to "ensure" that "each [unaccompanied] child" would have legal counsel to represent them in immigration court. Homeland Security Act of 2002, Pub. L. No. 107-296, § 462(b)(1)(A), 116 Stat. 2135, 2203. It directed ORR to "develop[] a plan" to ensure that "qualified and independent legal counsel is timely appointed to represent the interests of each such child." *Id.* Congress soon realized, however, that there were not enough lawyers who would provide their services without payment to meet unaccompanied children's legal needs and that ORR needed a stronger mandate and better resources to accomplish Congress's objective.

That was why, when Congress passed the TVPRA in 2008, it included a provision that directly addressed representation for unaccompanied children.

2

Rather than simply instructing ORR to develop a plan to reduce the number of children who appear *pro se* in immigration court, this provision required ORR to "ensure, to the greatest extent practicable" that "*all*" unaccompanied children are represented in court. 8 U.S.C. § 1232(c)(5) (emphasis added). And Congress then repeatedly appropriated funds for ORR to provide direct legal services for unaccompanied children. *See, e.g.*, S. Rep. No. 118-84, at 169 (2022).

But in March 2025, Appellants suddenly stopped funding these direct legal services, without finding another means of ensuring that these children would have legal representation. En Banc Stay Pet. App. 2, at 45 (noting that there is "no evidence" that the government "found pro bono counsel or even sought out alternative representation for the unaccompanied children"). Because ORR's broad recission of funding to legal services providers and failure to provide any alternatives plainly violates the TVPRA, this Court was correct to deny Appellants' request for a stay. The petition for rehearing en banc should be denied.

## ARGUMENT

### I.   As Its Text and History Make Clear, the TVPRA Directs ORR to Ensure Legal Representation for "All" Unaccompanied Children to the Greatest Extent Practicable.

**A.** The TVPRA commands, in nearly absolute terms, that ORR "ensure, to the greatest extent practicable," that "all" unaccompanied children are represented by counsel in immigration proceedings. 8 U.S.C. § 1232(c)(5).

3

"Ensure" means "to make (something) sure, certain, or safe." *Ensure*,

*Merriam-Webster's Advanced Learner's Dictionary* 553 (1st ed. 2008). In the

word "greatest," the suffix "-est" is "used to form the superlative" of the adjective

"great," *-Est*, *Merriam-Webster's*, *supra*, at 562, which means "very large in

amount or extent," *Great*, *Merriam-Webster's*, *supra*, at 720. "Practicable" means

"able to be done or used." *Practicable*, *Merriam-Webster's*, *supra*, at 1266. Thus,

Congress required ORR "to make sure" or "certain" that unaccompanied children

were represented by counsel to the very largest extent that could be done. That the

statute requires ORR to accomplish this for "all" children further underscores the

mandate that Congress was imposing on ORR—that is, to effectuate the broadest

provision of representation possible for unaccompanied children. *See* Shani M.

King & Nicole Silvestri Hall, *Unaccompanied Minors, Statutory Interpretation,

and Due Process*, 108 Calif. L. Rev. 1, 55 (2020).

The TVPRA also provides the agency with instruction about how to

effectuate the goal of universal representation for unaccompanied minors. The first

line of legal support should be attorneys who provide their services without being

paid to do so. 8 U.S.C. § 1232(c)(5). But the law does not allow ORR to stop

there. Instead, the law requires ORR to ensure legal representation "to the *greatest*

extent practicable," *id.* (emphasis added), a superlative that demands that ORR

4

marshal its available resources and maximize those resources' reach to meet the goal Congress set.

This strong, mandatory language in Section 235(c)(5) contrasts sharply with the language in other provisions of the TVPRA. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks and alterations omitted)); *Morales-Izquierdo v. Gonzales*, 477 F.3d 691, 707 (9th Cir. 2007) (using variations in nearby provisions to conclude that "Congress knew how to express an intention to deviate" so did not deviate in the provision at issue). For instance, the very next subparagraph of the TVPRA uses different language to give ORR much more discretion over the allocation of resources. It states that "[t]he Secretary . . . is authorized to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied alien children." 8 U.S.C. § 1232(c)(6)(A). That provision gives the government discretion to choose whether to allocate resources to child advocates; it does not command the Secretary to "ensure that such advocates are assigned," but rather authorizes the Secretary to do so.

5

In sum, as its text makes clear, the TVPRA does not allow ORR to abandon its congressionally mandated duty to try to achieve universal representation for unaccompanied children.

**B.** The TVPRA's history reinforces what its text makes clear. Since at least the early 1980s, substantial numbers of children, many fleeing violence or other dangerous conditions in their home countries, have arrived in the United States without a parent or guardian. Lauren R. Aronson, *The Tipping Point: The Failure of Form Over Substance in Addressing the Needs of Unaccompanied Immigrant Children*, 18 Harv. Latino L. Rev. 1, 2-3 (2015); *see also* UNHCR, *Children on the Run: Unaccompanied Children Leaving Central America and Mexico and the Need for International Protection* 24 (2014).

When the U.S. government apprehended these unaccompanied children, they were forced to navigate the immigration system alone and represent themselves in front of immigration judges. Jacqueline Bhabha, Immigr. Pol'y Ctr., *Crossing Borders Alone: The Treatment of Unaccompanied Children in the United States* 3 (2023). In the early 2000s, reports surfaced of, for example, an 18-month-old toddler appearing in court without any attorney or even a non-attorney representative. Women's Comm'n for Refugee Women & Child., *Prison Guard or Parent?: INS Treatment of Unaccompanied Refugee Children* 30 (2002). Even

older children and teenagers understandably struggled to understand the immigration process, their rights, and the implications of their legal choices. *Id.*

In 2002, Congress passed the Homeland Security Act, which, among other things, sought to remedy this problem and improve how children were treated in the nation's immigration system. § 462, 116 Stat. at 2202. The Act transferred custody of unaccompanied children from the Immigration and Naturalization Service and its successor, the Department of Homeland Security, which were responsible for prosecuting immigration cases against those same children, to the Office of Refugee Resettlement within the Department of Health and Human Services, which has long served both children and adults who claim "refugee" status. *Id.* § 462(a), 116 Stat. at 2202; *see generally* Refugee Act of 1980, Pub. L. No. 96-212, § 412(a), (d), 94 Stat. 102, 111, 114 (establishing ORR and giving it authority over "[a]ssistance for [r]efugee [c]hildren"). As one of ORR's new responsibilities, Congress directed the Office to "develop[] a plan to be submitted to Congress on how to ensure that qualified and independent legal counsel is timely appointed to represent the interests of each [unaccompanied] child." Homeland Security Act § 462(b)(1)(A), 116 Stat. at 2203.

ORR never submitted such a plan. Aronson, *supra*, at 8. It did, however, initiate a three-year pilot program in 2005, through which it contracted with the Vera Institute for Justice to coordinate the provision of pro bono legal counsel for

unaccompanied children. Olga Byrne & Elie Miller, Vera Inst. of Just., *The Flow of Unaccompanied Children Through the Immigration System* 5 (2012). The program relied only on attorneys donating their time; no government funds were provided to attorneys or legal services nonprofits to fund the representation. *Id.* But pro bono legal support alone was insufficient to meet the needs of unaccompanied children navigating the immigration system. *Id.* at 22-23. There simply were not enough volunteer lawyers to go around, especially in some of the border communities where unaccompanied minors were most likely to be located. *Id.*

This shortfall led to disturbing outcomes. For example, unrepresented children were at risk of being deported into dangerous situations that they could not adequately describe in court. *See* Christine M. Gordon, *Are Unaccompanied Alien Children Really Getting a Fair Trial – An Overview of Asylum Law and Children*, 33 Denv. J. Int'l L. & Pol'y 641, 657 (2005) ("Unaccompanied alien children . . . face being returned to their home country" even when they "came to the United States to escape severe abuse . . . and persecution by government death squads . . . ."). In the 2000s, observers cited the lack of legal representation for unaccompanied children as one of the main causes of these erroneous and inhumane outcomes and recommended guaranteed provision of legal counsel as a solution to many of the system's problems. Joyce Koo Dalrymple, *Seeking Asylum*

8

*Alone: Using the Best Interests of the Child Principle to Protect Unaccompanied Minors*, 26 B.C. Third World L.J. 131, 157 (2006) (identifying provision of legal counsel as the "[m]ost notabl[e]" component of proposed reforms); Gordon, *supra*, at 657-58 ("Because immigrants do not have a right to counsel unless they attain it privately, there is no one to help an unaccompanied alien child when they first arrive in the United States."); Raya Jarawan, Note, *Young, Illegal, and Unaccompanied: One Step Short of Legal Protection*, 14 Wash. & Lee J. Civ. Rts. & Soc. Just. 125, 135 (2007) ("Less than half to as little as 10% of unaccompanied immigrant children have counsel during their removal hearings. This percentage is unacceptable considering the complexity of an adversarial, administrative immigration proceeding." (footnotes omitted)).

Recognizing these injustices, and believing that "[a]ll unaccompanied alien children who are or have been in government custody[] must have competent counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking," 154 Cong. Rec. S4800 (daily ed. May 22, 2008), Congress passed the TVPRA in 2008. The provision of legal counsel was the "most important[]" of the law's provisions regarding unaccompanied children. Jenny Rodriguez, U.S. Comm. for Refugees & Immigrants, *Where We Stand: A 20-Year Retrospective of the Unaccompanied Children's Program in the United States* 36 (2023) (quoting Sen. Dianne Feinstein). That is because without

adequate representation, children may be "repatriated into the hands of traffickers or abusive families." H.R. Rep. No. 110-430, at 35 (2007); *see also* 153 Cong. Rec. H14120 (daily ed. Dec. 4, 2007) (statement of Rep. Sheila Jackson-Lee) (same). Congress correctly identified that when children appear in immigration court *pro se*, the court is less able to get to the bottom of their situation and accurately identify children who are or who are likely to become victims of "mistreatment, exploitation, and trafficking." 154 Cong. Rec. at S4800. Section 235(c)(5) represented the culmination of Congress's efforts to ensure that no child navigates these dangers alone.

## II. Since Passing the TVPRA, Congress Has Used Appropriations to Increase ORR's Capacity to Provide Legal Representation to Unaccompanied Children.

According to the panel, "[s]ince 2012, and as recently as March 15, 2025, Congress has consistently appropriated funds to ensure compliance with the TVPRA's statutory mandate." En Banc Stay Pet. App. 1, at 27.

By providing funding for "carrying out . . . section 235" of the TVPRA, *see* Further Consolidated Appropriations Act, 2024, 138 Stat. at 664-65, Congress affirmed Section 235's mandate to ensure that unaccompanied children have legal counsel "to the greatest extent practicable," 8 U.S.C. § 1232(c)(5). Indeed, as the District Court determined, Congress's appropriations decisions frequently eliminated one barrier to practicability: the absence of funding. En Banc Stay Pet.

App. 2, at 44 ("There is no dispute that congressionally appropriated funds for legal representation are available, making the provision of direct legal services 'practicable' . . . .").

And as Congress has provided these funds, it has repeatedly made clear that they should be used to ensure that unaccompanied children have legal representation. In 2020, lawmakers appropriated money to HHS to "provide qualified and independent legal services for unaccompanied children, including . . . court preparation[,] assistance, [and] representation." H.R. Rep. No. 116-62, at 145 (2019). They also made clear that they did not want ORR to leave legal services organizations in a position where they must triage which cases to take; instead, ORR was to spend all of the funds available to provide direct legal representation, so that lawyers would not have to reject children's cases based on their "age . . . ; release date; [or] estimated time to conclude [their] case." H.R. Rep. No. 116-450, at 180 (2020); *id.* (requiring ORR to provide direct legal representation "up to funded capacity").

During the 2022 appropriations process, Congress again directed ORR to spend its appropriated funds on direct legal representation for unaccompanied minors, providing that it should fund "the continued expansion of independent legal services for unaccompanied children." H.R. Rep. No. 117-96, at 211 (2021). Congress provided appropriations for these direct legal services because it

recognized that "independent legal counsel to unaccompanied children can increase the efficiency and effectiveness of immigration proceedings, significantly reduce the failure-to-appear rate of children who are released from HHS custody, and help relieve the immigration court backlog." *Id.* ORR was therefore to "minimize the risks of any child having to go to immigration court without independent legal counsel," *id.* at 211-12, the flipside of the TVPRA's textual mandate to ensure counsel for unaccompanied minors "to the greatest extent practicable," 8 U.S.C. § 1232(c)(5).

And during the 2023 appropriations process, Congress once again made clear that it "expect[ed] these funds [to] be used to provide access to counsel, consistent with the goals of the [TVPRA] for all children to have access to counsel in their immigration proceedings." S. Rep. No. 118-84, at 169. Congress showed particular concern that service providers "build the capacity to ensure the necessary legal requirements are met" for unaccompanied minors. *Id.* That appropriation was renewed in 2023 and 2025, and appropriated funds are now available through September 2027. Further Consolidated Appropriations Act, 2024, 138 Stat. at 664-65; Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, div. A, tit. I, § 1101(8), 139 Stat. 9, 11 (continuing the same funding).

Congress has thus repeatedly appropriated funds that ORR can use to pay lawyers to represent unaccompanied minors, thereby facilitating ORR's ability to

comply with the congressional directive that ORR "ensure, to the greatest extent practicable" that unaccompanied minors are represented in legal proceedings.

## III. ORR's Termination of All Funding for Representation of Unaccompanied Children Is Unlawful.

Here, the congressional command is clear: ORR must "ensure, to the greatest extent practicable," that unaccompanied children are represented by attorneys in court. 8 U.S.C. § 1232(c)(5). That directive leaves ORR no discretion to leave unaccompanied children without counsel, so long as Congress appropriates funds for that counsel or ORR is otherwise able to provide counsel. Although ORR may have some discretion to decide the "proper ordering of its priorities," it may not "simply . . . disregard statutory responsibilities," *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (quotation marks omitted), and that is what ORR seeks to do by broadly terminating all funding for representation of unaccompanied children.

**A**. According to Appellants, Section 292 of the Immigration and Nationality Act, which provides that "[i]n any removal proceedings before an immigration judge . . . , the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose," 8 U.S.C. § 1362, "permits the right to counsel in immigration proceedings only 'at no expense to the government.'" En Banc Stay Pet. 4.

This argument fundamentally misunderstands Section 292 of the INA. That section does two things. First, it creates an affirmative right to be represented by an attorney of one's choice. 8 U.S.C. § 1362 ("In any removal proceedings . . . , the person concerned shall have the privilege of being represented . . . by such counsel . . . as he shall choose."). Second, it limits the right it just created by clarifying that the section does not bestow a right to government-funded legal counsel. *Id.* ("at no expense to the Government"). That is, § 1362 does not extend the holding of *Gideon v. Wainwright*, 372 U.S. 335 (1963), to immigration proceedings. En Banc Stay Pet. App. 2, at 44.

But Congress's decision not to apply *Gideon* to immigration proceedings when it passed the INA does not preclude Congress from granting additional rights in other laws or from delegating duties to agencies on related matters. Years after Congress passed § 1362, Congress passed the TVPRA, which assigns ORR the duty of ensuring access to counsel for a subset of immigrants covered by § 1362: unaccompanied children. 8 U.S.C. § 1232(c)(5). ORR must pursue that goal to "the greatest extent practicable," *id.*, including by funding counsel, regardless of whether § 1362 had separately guaranteed a right to government-funded counsel.

**B.** Appellants also argue that Appellees need to show that unaccompanied children have an affirmative right to government-sponsored attorneys. 1-ER-0075 (PI Opp. 1). But this misunderstands the nature of Appellees' claim, which is that

14

ORR is violating its statutory *duty* to "ensure, to the greatest extent practicable" that unaccompanied minors are represented in court. *See* 3-ER-00369-48 (Compl. ¶¶ 35-38). So even if the TVPRA's cross-reference to § 1362 meant that unaccompanied children do not have an "enforceable right" to counsel on an individual basis, *see* 1-ER-0075 (PI Opp. 1), that would not change ORR's obligation under the statute to ensure, to the greatest extent practicable, that unaccompanied children are represented. Put differently, if ORR were trying, to the greatest extent practicable, to provide all unaccompanied children with counsel, those children who nonetheless ended up without counsel might not have a claim. But here the problem is that ORR is plainly failing to comply with the requirement set out in the statute.

**C.** Appellants also argue that the District Court lacked jurisdiction to review ORR's action because that action was "committed to agency discretion." En Banc Stay Pet. 12 (quoting 5 U.S.C. § 701(a)(2)). But courts must decline to review agency action only "*to the extent that* . . . [the] action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (emphasis added). The Supreme Court made clear in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), that courts may not ignore their obligations to engage in judicial review simply because a provision extends some discretion to the agency. Instead, courts must "fix[] the boundaries of delegated authority and ensur[e] the agency has engaged in reasoned

15

decisionmaking within those boundaries." *Id.* at 395 (quotation marks and citations omitted). In other words, a grant of discretion "is not a roving license to ignore the statutory text." *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007).

Here, Congress did not delegate discretion to ORR with respect to whether assuring legal counsel for unaccompanied children is a worthwhile goal or an appropriate use of agency resources. Rather, it commanded ORR to maximize the proportion of unaccompanied children who would be represented in court and to "minimize the risks of any child having to go to immigration court without independent legal counsel." H.R. Rep. No. 117-96, at 211-12. While ORR may have some discretion about how to pursue that goal and some expertise about how much legal coverage is "practicable," 8 U.S.C. § 1232(c)(5), the District Court correctly "fix[ed] the boundaries" of that discretion, *Loper Bright*, 603 U.S. at 395 (quotation marks and citations omitted). As discussed earlier, Congress directed ORR to "*ensure*" to the "*greatest* extent practicable" that unaccompanied minors are represented in court. 8 U.S.C. § 1232(c)(5) (emphasis added). That means treating § 1232(c)(5), which obligates ORR to achieve a certain goal to the greatest extent "practicable," differently from nearby provisions that merely "authorize[]" ORR to take certain action and leave the final decision to the agency, *e.g.*, *id.* § 1232(c)(6). Whatever discretion ORR may have to determine how best to implement a program of legal representation for unaccompanied minors, it clearly

16

does not have discretion not to implement that program at all. Such an approach cannot be squared with the text of the TVPRA.

Finally, Appellants rely on *Lincoln v. Vigil* to argue that the agency has discretion not to allocate resources to provide counsel to unaccompanied children, notwithstanding the clear command in the TVPRA's text and the years of congressional appropriations for direct legal services. En Banc Stay Pet. 15-16. But in fact, the differences between the TVPRA and the statute at issue in *Lincoln* demonstrate exactly why Appellants are wrong. In *Lincoln*, the Indian Health Service (IHS) was authorized to spend appropriated funds for the "relief of distress and conservation of health," including "mental-health," of American Indians, 508 U.S. at 185 (quoting 25 U.S.C. §§ 13, 1621(a)(4)(D) (1988) (now codified at 25 U.S.C. §§ 13, 1621(a)(5)(D))), and IHS had reallocated resources from a regional mental health center to a national program, a decision which had been "motivated by [its] goal of increased mental health services for all Indian [c]hildren," *id.* at 188 (quotation marks omitted). The Supreme Court concluded that IHS's "decision to discontinue the Program . . . [was] unreviewable" because the relevant laws authorizing IHS's expenditures spoke "about Indian health only in general terms." *Id.* at 193-94. Moreover, "[t]he reallocation of agency resources to assist handicapped Indian children nationwide clearly [fell] within the Service's statutory mandate to provide health care to Indian people." *Id.* at 194. But the Court

17

affirmed there that "an agency is not free simply to disregard statutory responsibilities," *id.* at 193, which is exactly what Appellants seek to do here. Unlike IHS, ORR has a statutory mandate to "ensure, to the greatest extent practicable," that immigrant children who are in this country without their parents or guardians have lawyers to represent them in court. *Compare* 25 U.S.C. § 13 (agency "shall . . . expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians"), *with* 8 U.S.C. § 1232(c)(5) (HHS "shall ensure, to the greatest extent practicable . . . that all unaccompanied alien children . . . have counsel to represent them in legal proceedings"). And ORR is not reallocating resources to better achieve that goal; instead, it appears to have given up on that goal entirely—an action the law plainly does not permit.

## CONCLUSION

For the foregoing reasons, the Government's petition for en banc rehearing should be denied.

Dated: June 20, 2025

Respectfully submitted,

/s/ Elizabeth B. Wydra
Elizabeth B. Wydra
Brianne J. Gorod
Smita Ghosh
Margaret Hassel
CONSTITUTIONAL
   ACCOUNTABILITY CENTER
1200 18th Street NW, Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

Counsel for *Amicus Curiae*

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**: 25-2808

I am the attorney or self-represented party.

**This brief contains 4,072 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ x ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Elizabeth B. Wydra        **Date** June 20, 2025

*(use "*s/[typed name]*" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 20, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 20th day of June, 2025.

/s/ Elizabeth B. Wydra
Elizabeth B. Wydra

*Counsel for Amicus Curiae*