No. 25-2808

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,

*Plaintiffs-Appellees,*

*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the Northern District of California (Hon. Araceli
Martinez-Olguin)
No. 3:25-cv-02847-AMO

———————————————

### PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC FROM THE PANEL'S ORDER OF MAY 14, 2025

———————————————

GIBSON DUNN & CRUTCHER LLP

Katherine Marquart (CA Bar No.
248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur M. Halliday (CA Bar No.
347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Monica K. Loseman (CO Bar. No. 34119)
Laura M. Sturges (CO Bar No. 36843)
Patricia M. Herold (CO Bar No. 54552)
Caelin Moriarity Miltko (CO Bar No. 56721)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700

Richard W. Mark (NY Bar No. 1705292)
200 Park Avenue
New York, New York 10166-0193
(212) 351-4000

IMMIGRANT DEFENDERS LAW CENTER

Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
(213) 634-0999

JUSTICE ACTION CENTER

Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272

AMICA CENTER FOR IMMIGRANT RIGHTS

Adina Appelbaum (VA Bar No. 88974)
Samantha Hsieh (VA Bar No. 90800)
Peter Alfredson (DC Bar No. 1780258)
Evan Benz (NC Bar No. 49077)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION..................................................................................1

BACKGROUND ..................................................................................2

    A.    Congress Directs HHS to Fund Counsel for Unaccompanied Children. 2

    B.    The Government Terminates Funding for Legal Representation. ........4

    C.    The District Court Preliminarily Enjoins Defendants' Termination and This Court Affirms. ..........................................................................5

STANDARD ........................................................................................6

ARGUMENT .......................................................................................6

    A.    The Panel Correctly Determined that the Government Could Not Show Irreparable Harm..................................................................................6

    B.    The Panel's Order Is Consistent with Supreme Court and Circuit Precedent on Tucker Act and APA Jurisdiction.............................................8

        1.    The Panel Correctly Applied This Circuit's Tucker Act Jurisprudence. ..................................................................................8

        2.    The Panel Correctly Applied This Circuit's Jurisprudence for Assessing Whether There is No Other Adequate Remedy. .....................10

    C.    The Panel's Order Is Consistent with Precedent Regarding Agency Discretion...............................................................................................13

        1.    The TVPRA sets standards that facilitate judicial review..............14

        2.    The Foundational Rule sets forth sufficient standards for judicial review. ..................................................................................17

CONCLUSION...................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ...................................................14

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ..................................................6, 7

*Allen v. Milas*,
  896 F.3d 1094 (9th Cir. 2018) ...........................................10, 12

*Ass'n of Am. Univs. v. Dep't of Energy*,
  2025 WL 1414135 (D. Mass. May 15, 2025) ..........................11

*ASSE Int'l, Inc. v. Kerry*,
  803 F.3d 1059 (9th Cir. 2015) ...........................................17, 18

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)........................................................8, 9, 12

*Cienega Gardens v. United States*,
  194 F.3d 1231 (Fed. Cir. 1998) ...............................................10

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) *abrogated on other grounds by Califano v.
  Sanders*, 430 U.S. 99 (1977)...................................................17

*City of Los Angeles v. U.S. Dep't of Com.*,
  307 F.3d 859 (9th Cir. 2002) ......................................14, 15, 18

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum.
  Servs.*,
  135 F.4th 852 (9th Cir. 2025) .....................................................5

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum.
  Servs.*,
  2025 WL 1189827 (9th Cir. 2025) ...........................................5

*Colorado v. U.S. Dep't of Health & Hum. Servs.*,
  2025 WL 1426226 (D.R.I. May 16, 2025) ...............................11

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ..................................................9

*Department of Education v. California*,
  145 S. Ct. 966 (2025)..........................................................7, 12

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..................................................................15

*Jajati v. U.S. CBP*,
 102 F.4th 1011 (9th Cir. 2024) ...................................................... 15

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*,
 56 F.3d 279 (D.C. Cir. 1995) ........................................................ 13

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) .......................................................... 6

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) .............................................................. 13, 16

*Megapulse, Inc. v. Lewis*,
 672 F.2d 959 (D.C. Cir. 1982) ..................................................... 8, 9

*Metro. Transp. Auth. v. Duffy*,
 2025 WL 1513369 (S.D.N.Y. May 28, 2025) ................................. 11

*Newman v. Apfel*,
 223 F.3d 937 (9th Cir. 2000) ........................................................ 17

*Nken v. Holder*,
 556 U.S. 418 (2009) ...................................................................... 6

*Pac. Nw. Generating Coop. v. Bonneville Power Admin.*,
 596 F.3d 1065 (9th Cir. 2010) ...................................................... 18

*Perez Perez v. Wolf*,
 943 F.3d 853 (9th Cir. 2019) ........................................................ 13

*Pinnacle Armor, Inc. v. United States*,
 648 F.3d 708 (9th Cir. 2011) ........................................................ 17

*Randall v. United States*,
 95 F.3d 339 (4th Cir. 1996) .......................................................... 10

*Robbins v. Reagan*,
 780 F.2d 37 (D.C. Cir. 1985) ........................................................ 13

*Rodriguez v. AT&T Mobility Servs. LLC*,
 728 F.3d 975 (9th Cir. 2013) ........................................................ 11

*S. Educ. Found. v. U.S. Dep't of Educ.*,
 2025 WL 1453047 (D.D.C. May 21, 2025) .................................... 11

*Toole v. Sec'y of the Navy*,
 446 F.3d 167 (D.C. Cir. 2006) .................................................... 9, 10

*United Aeronautical Corp. v. U.S. Air Force*,
 80 F.4th 1017 (9th Cir. 2023) ........................................................ 8

*United States v. Perez-Reyes*,
 83 F. App'x 922 (9th Cir. 2003) ..................................................... 6

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    586 U.S. 9 (2018) ................................................................13

*Widakuswara v. Lake*,
    2025 WL 1288817 (D.C. Cir. 2025) (Pillard, J., dissenting),
    *vacated en banc*, 2025 WL 1521355 ...................................11

**Statutes**

5 U.S.C. § 701(a)(2) ...........................................................13, 17

5 U.S.C. § 706(a)(2)(A) ...........................................................17

6 U.S.C. § 279(b)(1)(A) .............................................................2

8 U.S.C. § 1232(a)(5)(D) ...........................................................2

8 U.S.C. § 1232(c)(5) ...........................................................3, 14

28 U.S.C. § 1331 ....................................................................12

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub.
    L. 119-4, div. A, tit. I, § 1101(8) ......................................3, 16

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, div.
    D tit. II, 138 Stat. 460, 664-665 (2024) ...................................16

William Wilberforce Trafficking Victims Protection Reauthorization
    Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 .... 1, 3, 8, 9, 10, 13, 14, 15, 16

**Other Authorities**

Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children
    Through the Immigration System* (March 2012),
    https://shorturl.at/KI3Jt ..........................................................2

ORR, *Unaccompanied Alien Children Bureau Fact Sheet* (March 7,
    2025), https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet ..................2

**Rules**

Fed. R. App. P. 40(b)(2) ............................................................6

**Regulations**

45 C.F.R. § 410.1309(a)(4) .......................................................17

45 C.F.R. § 410.1309(a)(4), (d) ...................................................3

89 Fed. Reg. 34384, 34529 (Apr. 30, 2024) .......................................2

**INTRODUCTION**

The Government seeks en banc review of a denial of a discretionary stay pending appeal of the district court's preliminary injunction, which barred the Government from arbitrarily cutting off congressionally appropriated funding for legal representation of unaccompanied children in the immigration system. The Government's petition promises to show clear conflict with the precedent underlying the panel's denial of a discretionary stay—but delivers none.

The Government makes no showing that it would suffer irreparable harm absent a stay, reason enough to deny the petition. But the Government also manufactures conflict with precedent that does not exist. Plaintiffs-Appellees' ("Providers") claims here do not fall within the Tucker Act: as this Court has twice concluded, Providers' claims arise from violations of statutes and regulations and their requested relief is noncontractual. Nor is this suit beyond the ambit of the Administrative Procedure Act ("APA"): the detailed provisions of the relevant statute (William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA")) and regulation (the Office of Refugee Resettlement's ("ORR") Foundational Rule) meaningfully confine executive discretion, facilitating judicial review. There is no adequate remedy beyond the APA to redress the widespread injuries at issue here. The Government disagrees with the panel's reasoning, but cannot show the conflict or questions

1

required to justify the extraordinary step of en banc review. The Court should deny the Government's petition and the case should proceed to consideration on the merits with the benefit of full briefing, which will be complete by the end of July.

## BACKGROUND

### A. Congress Directs HHS to Fund Counsel for Unaccompanied Children.

In FY 2024, nearly 100,000 new children were identified as unaccompanied children after arriving in the country without a parent or legal guardian. ORR, *Unaccompanied Alien Children Bureau Fact Sheet* (March 7, 2025), https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet. Recognizing unaccompanied children's unique vulnerabilities, Congress provides them special legal rights. *See, e.g.*, 8 U.S.C. § 1232(a)(5)(D). Congress also makes available to unaccompanied children certain assistance—including legal counsel—to allow them to exercise those rights. 89 Fed. Reg. 34384, 34529 (Apr. 30, 2024).

In 2002, Congress assigned the Department of Health and Human Services ("HHS") and ORR custody of unaccompanied children and commanded they create a plan "to ensure that qualified and independent legal counsel is timely appointed to represent the interests of each such child." 6 U.S.C. § 279(b)(1)(A). A pilot program found that pro bono attorneys alone could not meet the needs of unaccompanied children. *See* Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children Through the Immigration System*, at 22–23 (March 2012), https://shorturl.at/KI3Jt.

2

Congress responded by requiring ORR and HHS to fund counsel for unaccompanied children, and by consistently appropriating money for that purpose.

Passed in 2008 and consistently reauthorized with bipartisan support (most recently in 2023), the TVPRA provides: "The Secretary of [HHS] *shall ensure*, to the *greatest extent practicable* . . . that all unaccompanied children who are or have been in the custody of the Secretary or the Secretary of Homeland Security . . . have counsel to represent them in legal proceedings or matters." 8 U.S.C. §1232(c)(5) (emphases added). Implementing that mandate, ORR's Foundational Rule commands: "To the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel, ORR *shall fund* legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations." 45 C.F.R. § 410.1309(a)(4), (d) (emphasis added).

Congress has consistently appropriated funds to implement these requirements. Most recently, in March 2025, Congress continued funding to "carry[] out" section 235 of the TVPRA through September 30, 2027. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, div. A, tit. I, § 1101(8). The Government satisfied this obligation by contracting with Acacia Center for Justice ("Acacia"), which sub-contracted with organizations like Providers to

3

provide legal representation. *See, e.g.*, Dkt. 7-15 ¶¶ 3–4 ("Amica Decl.").[1]

**B. The Government Terminates Funding for Legal Representation.**

On March 21, 2025, the Department of the Interior informed Acacia that the Government was terminating funding that day, commanding Providers to "immediately stop work" on active representations and stop taking new engagements. Dkt. 7-10 ¶ 10 ("NWIRP Decl.").

The termination has had devastating, irreparable effects on Providers' mission-driven work to ensure unaccompanied children do not face the immigration system alone. Dkt. 7-14 ¶ 7 ("Estrella Decl."). The abrupt termination forced Providers to lay off staff immediately and provided no guidance on how to handle existing representations. *See, e.g.*, Dkt. 37 at 31 ("PI Mot.") (describing layoffs and budget shortfalls); *See* Dkt. 7-7 ¶¶ 12, 13, 21 ("VAAP Decl."); NWIRP Decl. ¶¶ 9,11; Dkt. 7-11 ¶ 19 ("RMIAN Decl."); Estrella Decl. ¶¶ 13, 16. For example, on April 4, 2025, an ORR shelter asked Estrella del Paso if they could represent an unaccompanied child. Dkt. 40-2 ¶ 4 ("Estrella Supp. Decl."). Because Defendants had not complied with the district court's temporary restraining order ("TRO"), Estrella was unable to provide legal representation, and the child was removed days later without counsel. *See* Dkt. 33 at 7 ("TRO"); *Id.* ¶¶ 6, 9. Absent the preliminary injunction ("PI"), Providers will continue to be forced to terminate staff, further

---

[1] Docket entries from the district court are cited as "Dkt. XX."

4

frustrating their ability to represent the unaccompanied children they are committed to serve.  And more unaccompanied children will likely be removed after going through proceedings unrepresented.

### C. The District Court Preliminarily Enjoins Defendants' Termination and This Court Affirms.

On March 26, 2025, Providers filed this lawsuit, seeking declaratory and injunctive relief preventing Defendants from "ceas[ing] to fund counsel to represent unaccompanied children" and seeking a TRO.  Dkt. 1 at 39 ("Compl."); Dkt. 7 ("TRO Mot").  The district court granted the TRO.  TRO at 7.  This Court subsequently dismissed the Government's appeal of the TRO and denied rehearing en banc.  *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 2025 WL 1189827 (9th Cir. 2025); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 135 F.4th 852 (9th Cir. 2025).  The district court heard Providers' subsequent PI motion on April 23, 2025, and granted it on April 29, 2025.  Dkt. 87 ("PI Order").

The Government appealed this grant on April 30, 2025, Dkt. 88, but waited five days to file an "emergency" motion to stay.  ECF No. 5.1.  On May 14, 2025, the panel denied the motion.  ECF No. 17.1 at 3–4 ("Op.").  Two weeks later, the Government filed its petition for rehearing en banc ("PFREB").  ECF No. 23.1 ("PFREB").

## STANDARD

A party seeking en banc review must show that the panel decision conflicts with a prior decision of the Supreme Court, the Ninth Circuit, or an authoritative decision from another circuit or that it involves one or more questions of exceptional importance. *See* Fed. R. App. P. 40(b)(2). This is a demanding standard, and "rehearing en banc is not favored." *Id.* 40(a); *see also United States v. Perez-Reyes*, 83 F. App'x 922, 923 (9th Cir. 2003).

## ARGUMENT

The panel correctly applied longstanding precedent to determine that the Government demonstrated neither irreparable harm nor a likelihood of success on the merits, and the Government has shown no conflict or question that justifies en banc rehearing. The Court should deny this PFREB, allowing the appeal to proceed in its ordinary course.

### A. The Panel Correctly Determined that the Government Could Not Show Irreparable Harm.

Applying Supreme Court guidance, the panel found the Government fell well short of its burden to show it would suffer irreparable harm absent the extraordinary relief of a stay. Op. at 16–19; *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Government does not challenge the panel's holding on this threshold question, nor point to any question or conflict that would justify rehearing.

The "most critical" factors that a party seeking a stay must show are

6

irreparable harm and likelihood of success on the merits. Op. at 3; *Nken*, 556 U.S. at 434–35. "The minimum threshold showing for a stay pending appeal requires that irreparable injury is likely to occur during the period before the appeal is likely to be decided." Op. at 16; *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)). Here, the Government has made no such showing, baldly asserting that harm would occur if it was forced to uphold a congressional mandate to spend congressionally appropriated funds. *See* ECF No. 5.1 at 22–23. As the panel held, this does not constitute harm, let alone irreparable harm. Op. at 17–18.

The panel correctly held "[t]he Government has failed to demonstrate that spending congressionally appropriated funds as directed by Congress causes irreparable injury." *Id.* at 18. Unlike in *Department of Education v. California*, 145 S. Ct. 966 (2025), the Government did not submit a single declaration supporting its claims of harm. The Government's two-week delay in seeking en banc review further undercuts any claim of irreparable harm. The panel properly relied on circuit precedent "reject[ing] the notion that the injunction's effect on the 'separation of powers' qualifies as irreparable harm at the stay stage." Op. at 19. The Government's failure to dispute the panel's holding that the Government demonstrated no risk of irreparable harm, the threshold requirement for a stay pending appeal, warrants denial of the PFREB. *See Al Otro Lado*, 952 F.3d at 1007.

**B. The Panel's Order Is Consistent with Supreme Court and Circuit Precedent on Tucker Act and APA Jurisdiction.**

Seeking to manufacture the necessary conflict for en banc review, the Government improperly conflates two holdings and does not demonstrate that either justifies en banc review. First, the panel correctly held that the Tucker Act did not divest the district court of jurisdiction under the APA because Providers' claims are based on statutory and regulatory violations. Op. at 9–11. Second, and independently, the panel correctly recognized this case is unlike *Department of Education*. Op. at 7–9.

**1. The Panel Correctly Applied This Circuit's Tucker Act Jurisprudence.**

The panel properly held that the Tucker Act does not divest the district court of jurisdiction over Providers' claims because they "are based on the Government's statutory and regulatory violations, not any government contract." Op. at 5. Under longstanding Tucker Act precedent, the Tucker Act deprives district courts of jurisdiction over APA claims only if (1) the claims are founded upon contract-based rights, *and* (2) the plaintiff seeks a contract-based remedy. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026–27 (9th Cir. 2023); *Bowen v. Massachusetts*, 487 U.S. 879, 904, 905–06 (1988). Where a plaintiff neither "claim[s] a breach of contract," nor seeks a contractual remedy like monetary damages or specific performance, there is no contract claim. *Megapulse, Inc. v.*

8

*Lewis*, 672 F.2d 959, 969–70 (D.C. Cir. 1982).

Here, the panel correctly ruled that Providers' rights arise from the TVPRA and Foundational Rule. Op. at 6. Defendants ignore this, claiming that Providers "cannot point to any constitutional provision, statute, or regulation that entitles them to federal payment" and that Providers' rights "arise solely from the Acacia Contract," to which Providers are not a party. PFREB at 12. Providers' claims do not rest on the terms of any contract; instead, their claims are resolved based solely on the TVPRA and Foundational Rule. *See Megapulse*, 672 F.2d at 968–69. The *existence* of a contract that the Government used to perform its statutory and regulatory obligations is not sufficient to deprive the district court of jurisdiction. *Megapulse*, 672 F.2d at 968–70.

The Tucker Act also does not apply where the remedy sought is injunctive or declaratory. *Bowen*, 487 U.S. at 893, 895; *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022). Here, Providers sought injunctive relief, and the district court issued its order accordingly, preventing the Government from "withdrawing the services or funds provided by [ORR] as of March 20, 2025, under" the TVPRA and Foundational Rule. *See* PI Order at 28. Such relief could not be provided by the Court of Federal Claims. *See Toole v. Sec'y of the Navy*, 446 F.3d 167, 169 (D.C. Cir. 2006). The panel correctly found that "[s]eeking to ensure compliance with statutory and regulatory commands is a matter

9

beyond the scope of the Tucker Act's exclusive jurisdiction." Op. at 6. That the Government opted to comply with the district court's order by reinstating the Acacia contract is of no moment. The district court's order merely requires the Government to comply with the TVPRA and Foundational Rule; they could opt to comply through other non-contractual means, which would resolve Providers' mission harms and remedy at least in part their financial harms of seeking to do more with less. *See* PI Order at 9–10 (listing alternative compliance methods).

## 2. The Panel Correctly Applied This Circuit's Jurisprudence for Assessing Whether There is No Other Adequate Remedy.

As the panel correctly recognized, judicial review under the APA is the only remedy available to redress Providers' harms, and the Supreme Court's decision in *Department of Education* does not change this conclusion. Op. at 7-10; *see also Tootle v. Sec'y of the Navy*, 446 F.3d 167, 177 (D.C. 2013) ("There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act.") (citing *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996)). As the panel noted, subcontractors lack standing to adjudicate Tucker Act claims before the Court of Federal Claims. Op. at 8–10; *see also Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). Depriving district courts of jurisdiction over Providers' APA claims would leave Providers without a forum to challenge the unlawful agency action that causes their harm. Op. at 8–10. This conflicts with the "strong presumption favoring judicial review of administrative

10

action that is embodied in the APA." *Id.* at 11; *see also Allen v. Milas*, 896 F.3d 1094, 1103 (9th Cir. 2018).

The Government wrongly reads *Department of Education* to revolutionize Tucker Act precedent. But *Department of Education* neither implicitly overruled existing Supreme Court precedent nor irreconcilably conflicts with this Court's prior decisions. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979–80 (9th Cir. 2013). The panel rightly applied this circuit's existing precedent and its interpretation of *Department of Education* comports with the approach of courts across the country—none of which have found that *Department of Education* abrogated existing precedent. *See, e.g., Widakuswara v. Lake*, 2025 WL 1288817, at *13–14 (D.C. Cir. 2025) (Pillard, J., dissenting) ("The stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025), does not change the landscape."), *vacated en banc*, 2025 WL 1521355, at *1 (adopting Judge Pillard's reasoning); *Metro. Transp. Auth. v. Duffy*, 2025 WL 1513369, at *24–25 (S.D.N.Y. May 28, 2025) (applying pre-existing Second Circuit precedent); *S. Educ. Found. v. U.S. Dep't of Educ.*, 2025 WL 1453047, at *9 (D.D.C. May 21, 2025) ("*Department of Education* does not displace governing law that guides this Court's assessment of whether [Plaintiff's] claims are essentially contract claims."); *Colorado v. U.S. Dep't of Health & Hum. Servs.*, 2025 WL 1426226, at *9 (D.R.I. May 16, 2025) ("The case that 'directly controls, and the one that the Court must follow, is

11

*Bowen*."); *Ass'n of Am. Univs. v. Dep't of Energy*, 2025 WL 1414135, at *7 (D. Mass. May 15, 2025) (applying "well-settled precedent and practice" and factually distinguishing *Department of Education* in declining to send federal grant dispute to Court of Claims).

The short, fact-specific discussion in *Department of Education* leaves undisturbed a long line of binding precedent that federal court "jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 893, 910). The facts of *Department of Education*, where the order "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue" to plaintiff states with the "financial wherewithal to keep their programs running," are clearly distinguishable from this case, where nonprofit Providers seek injunctive, forward-looking relief for statutory violations. *Id.* at 968–69.

The Government cherry-picks language from *Allen* to suggest Ninth Circuit precedent requires leaving Providers without a judicial forum. PFREB at 14. Not so. Read in context, the quoted language merely states the uncontested proposition that the APA's waiver of sovereign immunity is "neither coextensive with subject matter jurisdiction nor a guarantee of a federal forum." *Allen*, 896 F.3d at 1099. The panel's opinion in no way contravenes this holding—that the APA does not provide an independent basis for subject matter jurisdiction—as subject-matter jurisdiction

is not disputed here (nor could it be under 28 U.S.C. § 1331).

Citing *Kidwell*, which supports the panel's holding, the Government also mischaracterizes D.C. Circuit precedent to attempt to manufacture a circuit split. In *Kidwell*, the D.C. Circuit *recognized* the district court's jurisdiction to review a serviceman's claim to equitable relief from improper discharge even though the equitable remedy would ultimately require a government payment. *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284–86 (D.C. Cir. 1995). Contrary to the Government's characterization, *Kidwell* supports the panel's "conclusion that plaintiffs' APA claims fall outside the Tucker Act's reach." *See* PFREB at 15.

## C. The Panel's Order Is Consistent with Precedent Regarding Agency Discretion.

The Government then invokes the APA's exception for actions entirely committed to agency discretion, suggesting that the panel's decision violates the separation of powers and somehow conflicts with *Lincoln v. Vigil*, 508 U.S. 182 (1993). PFREB at 19–-20. But the exception in 5 U.S.C. § 701(a)(2) only applies in profoundly limited circumstances when there is truly "no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln*, 508 U.S. at 191). Even when an agency has broad discretion, such discretion does "not render the agency's decisions completely nonreviewable." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985); *see also Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019).

13

The TVPRA and the Foundational Rule provide clear guardrails to judge the Government's actions, and the panel's holding recognizing as much presents no conflict or question justifying rehearing. Op. at 15-16.

1.    **The TVPRA sets standards that facilitate judicial review.**

The TVPRA commands the Government "ensure, to the greatest extent practicable" that unaccompanied children have legal representation. 8 U.S.C. § 1232 (c)(5). Providers agree the Government has some discretion in deciding how to meet this statutory directive, which does not mandate the federal government fund legal representation for *every* unaccompanied child. *See, e.g.*, ECF 11.1 at 26; PFREB at 17. But that discretion is bounded, and meaningfully so, by the phrase "to the greatest extent practicable," which is "certainly is not the same as 'to no extent at all.'" Op. at 15. The statute requires the agency to provide legal representation to unaccompanied children to the greatest degree practicable given existing appropriations. *Id.*; ECF 11.1 at 23. And Congress need not expressly refer to the spending of federal funds for a statute to require an agency to provide funding. *Cf. In re Aiken Cnty.*, 725 F.3d 255, 257, 267 (D.C. Cir. 2013) (requiring an agency to spend appropriated funds to meet a statutory requirement even when the operative statute did not expressly require funding). Courts consistently find similar statutory language provides a sufficiently meaningful standard. *See City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002); Op. at 15–16 (listing

14

cases).

The Government cites *United States v. Texas*, a standing case, to claim that the TVPRA's statutory text grants unreviewable discretion, but *Texas* is inapposite. 599 U.S. 670 (2023). First, *Texas* dealt with judicial review of law enforcement and prosecutorial discretion under laws providing that the Secretary of Homeland Security "shall" investigate and prosecute immigration violations. *Id.* at 676–78. The Court referred to "the 'deep-rooted nature of law-enforcement discretion'" in rejecting plaintiffs' claim. *Id*. at 682. But outside this context, courts read "shall" as "a mandatory term" that imposes a reviewable obligation on an agency. *Jajati v. U.S. CBP*, 102 F.4th 1011, 1018 (9th Cir. 2024); *see also City of Los Angeles*, 307 F.3d at 869 n.6. Second, the statutes in *Texas* provided no additional language to determine the level at which the agency must act. *Id.* at 674, 682. Thus, neither context nor statutory text are analogous. Because the TVPRA mandates representation "to the greatest extent practicable," the Government has an additional standard against which their actions must be reviewed.

Additionally, in *Texas*, the issue was not whether the Executive Branch was failing to pursue immigration-related arrests and prosecutions *at all*. The Court explicitly acknowledged that a plaintiff could obtain APA review "if an agency 'has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'" *Id.* at 682-83 (citing *Heckler v.*

15

*Chaney*, 470 U.S. 821, 833 n.4 (1985)).  That is exactly what happened here:  in terminating funding for legal representation for unaccompanied children entirely, the Government abdicated its statutory responsibilities under the TVPRA.  The Government has not provided any evidence that it has taken *any* step to meet these obligations outside those mandated by the PI Order.

The Government tries to manufacture a conflict by raising *Lincoln*, a case involving executive allocation of lump-sum appropriations, but that case and this one are night and day.  *Lincoln v. Vigil*, 508 U.S. 182 (1993).  In *Lincoln*, there was no statutory requirement that the agency carry out the program at issue—just a lump-sum appropriation.  *Id.* at 186–87.  The panel correctly found that "[t]he rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program that is *required* by statute."  Op. at 12; *see also Lincoln*, 508 U.S. at 193 ("[A]n agency is not free to simply disregard statutory responsibilities.").  *Lincoln* is further distinguishable because Congress left no doubt that the appropriations here are intended to be used for direct legal representation of unaccompanied children. *See, e.g.*, Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, div. D tit. II, 138 Stat. 460, 664-665 (2024) ("For necessary expenses for refugee and entrant assistance activities authorized by . . . section 235 of the [TVPRA]").  Whether the Government has acted in accordance with those mandates is a question prime for judicial review.

## 2. The Foundational Rule sets forth sufficient standards for judicial review.

The Government erroneously contends that because the Foundational Rule grants ORR some limited discretion, its decisions necessarily fall outside the scope of judicial review.  PFREB at 20–22.  In support, the Government musters only a single citation to a case the panel properly applied, Op. at 12–14, and ignores the plain language of the Foundational Rule, *see* 45 C.F.R. § 410.1309(a)(4).

The Government argues that the appearance of the word "discretion" in the Foundational Rule automatically makes the Government's compliance with the Foundational Rule unreviewable.  PFREB at 21.  But no court has ever read § 701(a)(2) so broadly, demonstrated by the Government's lack of any authority for this novel proposition.  *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1071 (9th Cir. 2015).  Thus, the panel's opinion properly applied circuit precedent.  The Government's arguments here mirror those that the courts have routinely rejected: merely because "regulations also give [agencies] discretion in the administration of [programs] does not prevent [judicial] review."  *ASSE,* 803 F.3d 1059, 1071; *see also Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000).  If the existence of discretion were enough, then the APA's commitment of "final agency action to [judicial] review for *'abuse of discretion*,'" would be rendered an empty set.  *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 720 (9th Cir. 2011) (quoting 5 U.S.C. § 706(a)(2)(A)) (emphasis added).

17

As the panel opinion recognized, it is well established that far less deterministic language permits APA review.  *See, e.g.*, *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Pac. Nw. Generating Coop. v. Bonneville Power Admin.*, 596 F.3d 1065, 1075 (9th Cir. 2010); *City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002).  Contrary to the Government's suggestion, the abuse of discretion standard is "a standard of review, *not a bar to review*." *ASSE*, 803 F.3d at 1071 (emphasis added).  Accordingly, the panel properly held the Foundational Rule sets forth judicially reviewable standards.

## CONCLUSION

The Government has shown neither irreparable harm, nor that the panel's decision conflicts with any existing Supreme Court or Ninth Circuit precedent, nor any other question to justify rehearing.  There is no basis for en banc review of the panel's denial of a discretionary stay.  This Court should deny the Government's request and allow this case to proceed to full consideration on the merits.

Dated: June 20, 2025                    Respectfully submitted,

*/s/ Katherine Marquart*                  */s/ Alvaro M. Huerta*
GIBSON DUNN & CRUTCHER LLP      IMMIGRANT DEFENDERS LAW
                                        CENTER

18

Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur M. Halliday (CA Bar No. 347620)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Monica K. Loseman (CO Bar. No. 34119)
Laura Sturges (CO Bar No. 36843)
Patricia M. Herold (CO Bar No. 54552)
Caelin Moriarity Miltko (CO Bar No. 56721)
Gibson, Dunn & Crutcher LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
mloseman@gibsondunn.com
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

Richard W. Mark (NY Bar No. 1705292)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193
(212) 351-4000
rmark@gibsondunn.com

Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

*/s/ Esther H. Sung*
JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

*/s/ Adina Appelbaum*
AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (VA Bar No. 88974)
Samantha Hsieh (VA Bar No. 90800)
Peter Alfredson (DC Bar No. 1780258)
Evan Benz (NC Bar No. 49077)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org

19

peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** 25-2808

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,197 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Katherine Marquart   **Date** 6/20/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                           *Rev. 12/01/24*