No. 25-2808

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**COMMUNITY LEGAL SERVICES IN EAST PALO ALTO,** et al.

Plaintiffs-Appellees,

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**, et al.

Defendants-Appellants.

---

Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-02847

---

**BRIEF OF AMICI CURIAE LEGAL SERVICES PROVIDERS IN OPPOSITION TO REHEARING *EN BANC***

---

David J. Burman
PERKINS COIE LLP
1301 Second Ave., Ste. 4200
Seattle, WA 98101
Telephone: (206) 359-8000

*Attorneys for Amici Curiae*

- i -

## TABLE OF CONTENTS

STATEMENTS OF INTEREST ........................................................................ 1

INTRODUCTION .......................................................................................... 6

CLIENT EXPERIENCES ............................................................................... 8

CONCLUSION ............................................................................................. 16

CERTIFICATE OF SERVICE ...................................................................... 18

CERTIFICATE OF COMPLIANCE ............................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

8 U.S.C. § 1232(c)(5) ................................................................. 2

8 U.S.C. § 1101(a)(27)(J) ........................................................... 6

Fed. R. App. P. 29(a)(2) .............................................................. 1

Fed. R. App. P. 29(a)(4)(E) ......................................................... 5

153 Cong. Rec. S3004 (daily ed. Mar. 12, 2007) .............................. 7

## STATEMENTS OF INTEREST

Amici are not-for-profit organizations providing legal and ancillary services to immigrant children who arrive in the United States under the age of 18 unaccompanied by a parent or legal guardian (unaccompanied children, or UC). Along with dozens of other nonprofits, amici have received support to provide such services under contract from Acacia's Unaccompanied Children Program (UCP), funded, until the funding cutoff giving rise to this litigation, by congressional appropriations administered by the United States Department of Health and Human Services (HHS). Amici serve children through a combination of services provided directly by organization staff and representation by pro bono attorneys trained and guided by the amici organizations, who have years of experience working with unaccompanied minors.

All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2).

Amici believe that this brief will assist the Court in understanding why Congress concluded that these children require legal assistance in determining and establishing their eligibility for Congressionally authorized immigration protections, and why unsupported and unorganized volunteer pro bono representation would be woefully insufficient. One thing is certain: defunding the programs did not make pro bono representation of unaccompanied children more

"practicable," *see* 8 U.S.C. § 1232(c)(5). And without counsel, children struggle to even identify and articulate the factors meriting protection.

**Kids in Need of Defense (KIND)** is the leading national not-for-profit organization devoted to protecting the rights and well-being of unaccompanied and separated children. Since its founding in 2008, KIND has provided legal representation in immigration matters to more than 17,000 children, provided legal rights education to more than 78,000 children, and formed partnerships with nearly 900 corporations, law firms, law schools, and bar associations. KIND serves children in part through its legal staff, and in part by conducting comprehensive legal screenings for children and matching them with pro bono attorneys who provide representation with training and ongoing support from KIND. KIND's social services program facilitates additional support for the children KIND serves. KIND also works to address the root causes of child migration and to promote the safety and well-being of children at every phase of migration.

**The Advocates for Human Rights** is a volunteer-driven, non-profit organization whose mission is to implement internationally recognized human rights in order to promote civil society and reinforce the rule of law. Founded in 1983, The Advocates for Human Rights has provided free legal representation through pro bono and staff attorneys to people seeking asylum, including children, for more than 40 years. The Advocates also provides free legal help to victims of

human trafficking, and since 2022 has been a partner of the Acacia Center for Justice or its predecessor, the Vera Institute of Justice, in providing legal representation to children released from federal Office of Refugee Resettlement custody through direct representation by staff attorneys and through pro bono attorneys trained and supported by experienced staff.

**Public Counsel,** based in Los Angeles, is a non-profit public interest law firm dedicated to advancing civil rights and racial and economic justice, amplifying the power of its clients through comprehensive legal advocacy. Founded in 1970 and strengthened by a pro bono legal service model, Public Counsel's staff and volunteers seek justice through direct legal services, promote healthy and resilient communities through education and outreach, and support community-led efforts to transform unjust systems in and beyond Los Angeles. Public Counsel's Immigrants' Rights Project provides pro bono placement, support, and direct representation to immigrants, including unaccompanied minors, families, and survivors of domestic violence, and currently represents hundreds of individuals seeking humanitarian relief. The Project's Unaccompanied Children's Team advocates for indigent children caught in an undecipherable immigration system.

**Charlotte Center for Legal Advocacy** (CCLA) is a nonprofit organization based in Charlotte, North Carolina, that provides civil legal services to low-income

individuals and families across the region. Since 1967, CCLA's mission is to pursue justice for those in need, regardless of the individual's immigration status. Through its Immigrant Justice Program, CCLA has represented hundreds of children over the past 15 years, including over 400 children under the Unaccompanied Children's Program, in matters involving asylum, Special Immigrant Juvenile Status, U Visa, and T Visa petitions. CCLA's extensive experience and success in defending children in removal proceedings and other immigration cases has established it as the major resource in the region.

**Michigan Immigrant Rights Center** (MIRC) is a nonprofit legal resource center for Michigan immigrant communities. MIRC provides free legal services to indigent people, currently representing nearly 1,000 unaccompanied immigrant children. MIRC is a subgrantee of the Acacia Center for Justice Unaccompanied Children Program and represents children through that program and with other funding.

**Americans for Immigrant Justice** (AI Justice) is a nonprofit law and advocacy firm that protects and promotes the basic human rights of immigrants. Its mission in Florida and on a national level is to champion the rights of unaccompanied children; advocate for survivors of trafficking and domestic violence; serve as a watchdog on immigration detention practices and policies; fight to keep families informed, empowered and together; and pursue redress on

- 4 -

behalf of immigrant groups with particular and compelling claims to justice. Through AI Justice's Children's Legal Program, the organization has served thousands of unaccompanied children in South Florida by providing direct representation and other legal services, such as Know Your Rights presentations and Friend of Court assistance. AI Justice stands firmly in support of immigrant children's rights and advancing justice.

**Refugee and Immigrant Center for Education and Legal Services** (RAICES) is a nonprofit organization that fights for the freedoms of immigrant, refugee, and asylum-seeking families. Founded in San Antonio in 1986, RAICES is the largest immigration legal services provider in Texas and pairs direct legal representation and social services case management with impact litigation and advocacy. RAICES maintains a presence in six Texas cities and makes immigration legal services accessible in rural communities throughout the state.

Each of the amici has a strong interest in protecting immigrants' rights, and particularly in ensuring that no child faces a courtroom alone.

Pursuant to Fed. R. App. P. 29(a)(4)(E), amici state that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and that no person other than the amici, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

## INTRODUCTION

Amici serve thousands of unaccompanied children facing immigration removal proceedings or seeking stable immigration status. Amici's legal staff are trained to recognize factors indicating eligibility for immigration relief authorized by statute, such as asylum, protections for victims of human trafficking or other crimes, and special immigrant juvenile status (SIJS),[1] which protects certain children who have experienced circumstances such as parental abuse, neglect, or abandonment. In addition to their knowledge of immigration law and policy, amici's legal personnel implement child-centered and trauma-informed practices in interviewing, counseling, and advocating for their clients, and they guide and impart these skills and practices to the pro bono counsel they support. Moreover, many of amici employ social work professionals who connect children with supportive services that may include counseling, educational support, nutrition programs, and access to shelter.

These services are invaluable to unaccompanied children, not solely because they receive them free of cost, but because the services are tailored to the particular needs of children who have fled from harm to seek safety through the United States immigration system. Children would otherwise be forced to proceed pro se

---

[1] *See* 8 U.S.C. § 1101(a)(27)(J), defining the criteria for granting special immigrant juvenile status (SIJS).

– in the words of the late Senator Feinstein, "forced to struggle through a system designed for adults, even though they lack the capacity to understand nuanced legal principles, let alone courtroom and administrative procedures."[2]

Amici are committed to maximizing the effective use of pro bono lawyers through continuous recruiting, training, and mentoring. Based on their years-long efforts and experience, amici concur in the assessment implicit in the direction of Congress and HHS that the pro bono services volunteered by the private sector are important but cannot comprehensively serve unaccompanied children. Simply put, the supply of pro bono services is not enough to meet demand, and few lawyers who occasionally practice immigration law can master the complex legal issues and often challenging needs of children.

Pro bono lawyers necessarily start with modest (if any) knowledge of the immigration legal system and are not prepared to undertake children's representation without training and support, particularly in light of the unexpected and urgent needs that arise in children's cases. Most pro bono attorneys whose primary practice area is not immigration law seek a high degree of training and mentorship, due to the complexity of children's immigration matters and the additional challenges of serving a child client. The cutbacks of funding at issue have severely curtailed staffing for pro bono recruiting and mentorship, in turn

---

[2] 153 Cong. Rec. S3004 (daily ed. Mar. 12, 2007) (statement of Sen. Feinstein).

limiting the availability of the support on which pro bono attorneys have relied. At the same time, with the advent of more restrictive immigration policies, pro bono attorneys and immigration nonprofits face surging demand for free immigration legal services.

Amici believe that the Court's consideration of the motion before it will be aided by illustrations of how legal and social services professionals respond to children's needs and assist them in navigating legal processes. This brief therefore presents brief descriptions of some matters in which amici have successfully supported children. The brief uses pseudonyms to preserve the children's privacy.

## CLIENT EXPERIENCES

Henry suffered severe abuse and later abandonment by his father in Guatemala. He compared his life there to "living like a dog." Henry recalled an evening when his father threw him out of the house in the rain and continued to hit him outside. Cold and injured, Henry spent hours out in the dark, waiting for it to be safe to return. Even after Henry took refuge at his grandparents' home, his father found him walking in the neighborhood and struck him with his car. Realizing he would never be safe in Guatemala, Henry made the heartbreaking decision to make his way to the United States in search of safety.

Henry entered the United States as an unaccompanied child and was placed in an Office of Refugee Resettlement (ORR) shelter before being released to his

mother in Florida. His life changed when he was connected with an attorney at Americans for Immigrant Justice. With his attorney's help, Henry applied for and was granted both special immigrant juvenile status and asylum. Today, Henry is a lawful permanent resident proudly serving in the United States armed forces.

Stella arrived in the United States as an unaccompanied child of 12. Today, she thrives in the care of her mother and is receiving essential care for a heart condition. After a legal screening, KIND staff recognized that Stella appeared eligible for special immigrant status. In mid-2020, a New Jersey family court determined that it was not viable for Stella to reunify with her father in Honduras, due to his having neglected Stella since she was a baby. In 2021, based on the state court's findings, USCIS approved Stella's SIJS petition, placing her on a path to apply for a green card. Due to severe backlogs in visa availability, however, Stella endured a three-year wait before she was even allowed to apply, then waited six more months for a decision granting her lawful permanent residency in the United States. The pro bono team mentored by KIND guided Stella through the multi-step process to establish her eligibility for protection. Moreover, with Stella's SIJS petition approved, the attorneys and KIND's social services staff navigated multiple roadblocks to help Stella obtain and renew health care insurance to better access treatment for her heart condition. And as Stella

graduated from high school, her attorney helped guide her on pursuing higher education.

Cristian's pursuit of protection was nearly blocked by the existence of conflicting birth records. A successful petition for SIJ status requires, among other things, evidence of the child's birth date and identity of the parents. For reasons outside his control, Cristian had been issued two birth certificates, each reflecting a different birth year and a different name for his mother. In light of these discrepancies, USCIS denied Cristian's SIJS petition. Overcoming that denial took dedicated efforts by Cristian's attorney and support team at The Advocates for Human Rights. The team gathered and presented comprehensive evidence, including school records, affidavits, dental imaging, and hand scans, to establish Cristian's age and eligibility for SIJS. His attorney's advocacy ensured that the youth's case was thoroughly reviewed.

On review, USCIS's Administrative Appeals Office (AAO) found that Cristian had provided credible explanations for the discrepancies, supported by consistent secondary evidence that met his burden of proof, and the initial denial was reversed. Cristian now awaits his opportunity to apply for lawful permanent residency based on his SIJ status, and he also has a pending claim for asylum as he navigates his ongoing removal proceedings. Without the support of his attorney

and case worker, Cristian's case almost certainly would have ended differently, leaving him without the protection and the opportunities he desperately needed.

In 2023, while serving residents of an ORR foster care shelter for teen boys in ORR custody, the Michigan Immigrant Rights Center (MIRC) received an alarming report from a client. At the time, the majority of the boys in the shelter spoke an indigenous language or Spanish. Being isolated from the larger community due to their detention, the boys were highly dependent on the staff at the facility for all their needs. Unfortunately, a staff member at the facility took advantage of their access to vulnerable and isolated youth to sexually abuse MIRC's client and other youth at the facility.

The client informed MIRC staff about what was occurring and relied on MIRC to ensure steps were taken to protect him and other youth from the abuser. MIRC is supporting their client in his ongoing participation in criminal proceedings as a victim of the crime. MIRC also supported other youth at the facility with screenings for abuse, support when engaging with law enforcement as crime victims and witnesses, and preventing retaliation against those reporting crimes. Without MIRC, the client and other children in the ORR shelter would not have had trusted independent advocates to whom they could report these experiences, and the abuse could have gone unchecked without safe and supportive avenues for reporting. With MIRC's assistance, the client will be able to seek

protection through a U visa based on his cooperation with law enforcement as a witness in criminal proceedings, which further serves to protect others from future harm.

At age 11, Franco left Guatemala after living through years of physical and emotional abuse by his father. He arrived in the United States as an unaccompanied child, and ORR placed him with an aunt he had never met before. Franco's aunt, then only 19 years old, was already responsible for caring for her two younger brothers, Sam and Antonio, who were also unaccompanied children. Franco's aunt initially hired a private attorney to represent the three young boys, but quickly realized she would not be able to both provide for them and pay for an attorney.

All three children appeared to be eligible for special immigrant juvenile status (SIJS), so the Charlotte Center for Legal Advocacy represented Franco's aunt in obtaining permanent custody of all three children, overcoming the perception that she was too young to care for the three boys. With CCLA's assistance, Franco, Sam, and Antonio were all granted SIJS as well as deferred action, protecting them from removal and allowing them to obtain work permits and identification while waiting for visas and a chance to become lawful permanent residents. CCLA also attended immigration court with Sam and

Antonio, successfully sought termination of their removal proceedings, and will do the same for Franco if he is scheduled for a court date.

The boys' legal custodian also received legal assistance from CCLA. Having arrived in the United States as a 17-year-old unaccompanied child, she too could have established eligibility for SIJS, but for lack of timely access to counsel. Nonetheless, CCLA defended her in removal proceedings, successfully arguing that she was not a priority for removal. CCLA's representation helped this family unit to stay intact and avoid forcible removal to dangerous conditions in Guatemala.

Staff of CCLA met with Honduran brothers Alex (then 13) and Daniel (then 8) and determined that they were eligible to apply for asylum, with a strong claim that they were persecuted due to their family ties. Through a special process directed at unaccompanied children, a right they were unaware of, the boys were entitled to apply for asylum through USCIS. This afforded them a less adversarial process before an asylum officer trained in child-centered interviewing techniques, which was especially important for Alex and Daniel given their young ages and traumatic experiences in Honduras.

CCLA filed both brothers' asylum applications in summer 2024, and almost immediately received an interview notice for Alex only. CCLA sought interviews on the same date because the boys' claims arose from common facts and their

- 13 -

testimony would be mutually reinforcing. Both boys were granted asylum about a month and a half after their interviews. Their grants of asylum were based on the strength of their underlying facts, but without counsel, the boys likely would have missed the chance to tell their stories together and in non-adversarial asylum interviews. Their counsel assisted with every step of the process, from preparation for the interviews to a closing statement that provided essential context for the officer.

Lucia arrived in the United States when she was just 7, fleeing violence and unstable circumstances. She was placed in ORR custody and eventually reunified with her father. In El Salvador, she had never attended school or received medical or dental care. Almost a year after arriving, Lucia missed an immigration court hearing due to circumstances beyond her control. She was issued an order of removal. As an eight-year-old who spoke only Spanish and had no understanding of the immigration process, Lucia had no way of navigating the system on her own.

When Lucia first met with legal staff at Public Counsel, she was living in fear: afraid to go to school, the grocery store, or even family parties, knowing that there was a deportation order hanging over her. An attorney explained that Lucia could ask the immigration court to reopen her case, and filed a motion to reopen, which was granted. That marked a turning point in Lucia's life, and the first of

many steps in a complex legal journey. Her attorney identified that Lucia may be eligible for special immigrant juvenile status due to past neglect, and began preparing her SIJS case so that she can remain safely in the U.S. with her father.

Before Lucia got legal counsel, she and her father did not know that anything could be done to resolve her situation, let alone how to move forward. Today, Lucia is thriving. She attends school, gets medical care, takes after-school piano classes, and—most importantly—no longer lives in constant fear.

Layla was forced to flee Honduras at 16 to escape abuse by her mother, who beat Layla with a rope repeatedly throughout her childhood. No one protected Layla from the abuse: her father was absent, and was said to be a gang member, resulting in the murder of several relatives and many threats against her family, sending Layla and her mother into hiding. Layla was terrified and distraught by the life she led in Honduras, and knowing she would not be safe there, fled to the United States as an unaccompanied child.

In Los Angeles, Layla met with an attorney from Public Counsel. At first, it was difficult for Layla to talk about life in Honduras, until she built trust in her attorney and understood that her attorney's role was to defend her in removal proceedings and help her seek permission to stay in the U.S. if that was her goal. The lawyer represented Layla in seeking special immigrant juvenile status based on the harm she experienced in Honduras. In addition, a social worker provided

essential support, particularly when Layla struggled after the birth of her child in 2022. Her social worker connected Layla with benefits, helped her find a new apartment, and helped her secure essentials like diapers, clothes for her child, toys, and a refrigerator.  But according to Layla, the greatest impact came from having someone to confide in, which made her feel confident and reassured.

A setback occurred last year, when USCIS unexpectedly declined to renew Layla's employment authorization document (EAD). Layla worried that she would be unable to support herself and her daughter, but her attorney helped Layla to both appeal the denial and reapply, and eventually, Layla received a new EAD. Layla credits her legal team with making it possible for her to pursue her rights, because she could not afford to pay a private attorney. Today, having SIJ status, a work permit, a job, and a path to lawful permanent residency allows her a measure of security and stability. In Layla's own words, "I feel much more secure having a team behind me and I'm grateful because it would not have been possible without them."

## CONCLUSION

The children's cases summarized above reflect a tiny fraction of the legal services and psychosocial support that tens of thousands of unaccompanied children have received through amici and dozens of other legal services providers supported by funding Congress appropriated for this purpose.  If this Court stays the district

court's preliminary injunction, these services and ongoing attorney-client relationships will be disrupted, leaving vulnerable children to attempt to represent themselves against experienced government counsel in complex legal proceedings. Such disruption of services will not only frustrate the purpose of amici, Plaintiffs, and other legal services organizations but also that of Congress in seeking to provide a modicum of effective due process for unaccompanied children and youth. Amici respectfully request that the Court consider these harms and deny the petition for *en banc* rehearing.

Respectfully submitted on June 20, 2025.

**PERKINS COIE LLP**

By: *s/ David J. Burman*
    David J. Burman
    1301 Second Ave., Suite 4200
    Seattle, Washington 98101

*Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I, David J. Burman, attorney for amici, certify that on June 20, 2025, an electronic copy of this document was served by notice of electronic filing via this Court's ECF system upon counsel for all parties.

*s/ David J. Burman*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Circuit Rule 40-1 because it contains 3,701 words, excluding the parts of the brief exempted by Fed. R. App. P. 32.

2.      This brief complies with the typeface requirements of Fed. R App. P. 32(a)(5) and the type of style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font in text.

3.      This brief complies with the privacy redaction requirement of Fed. R. App. 25(a)(5) because it contains no personal data identifiers.

4.      The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

Dated: June 20, 2025

*s/ David J. Burman*