CASE NO. 25-2808

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO; SOCIAL JUSTICE
COLLABORATIVE; AMICA CENTER FOR IMMIGRANT RIGHTS; ESTRELLA DEL PASO;
FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT; GALVESTON-HOUSTON
IMMIGRANT REPRESENTATION PROJECT; IMMIGRANT DEFENDERS LAW CENTER;
NATIONAL IMMIGRANT JUSTICE CENTER; NORTHWEST IMMIGRANT RIGHTS PROJECT;
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK; VERMONT ASYLUM
ASSISTANCE PROJECT

*Appellees*,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES
DEPARTMENT OF THE INTERIOR; OFFICE OF REFUGEE RESETTLEMENT,

*Appellants*.

On Appeal From The United States District Court
Northern District of California,
Case No. 3:25-cv-02847-AMO,
Honorable Araceli Martinez-Olguin

**BRIEF OF *AMICI CURIAE* FORMER OFFICIALS OF THE UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES IN OPPOSITION TO
DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC FROM THE
PANEL'S ORDER OF MAY 14, 2025**

**ROSEN BIEN GALVAN & GRUNFELD LLP**
Gay Crosthwait Grunfeld
Benjamin Bien-Kahn
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104

*Attorneys for Amici Curiae*

[4702519.3]

## TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICI CURIAE*....................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT ........................................................................................................5

I.    UNACCOMPANIED CHILDREN SUFFER HARM WHEN THEY MUST NAVIGATE THE IMMIGRATION SYSTEM WITHOUT A LAWYER ........................................................................................................5

II.   ORR HAS CONSISTENTLY RECOGNIZED ITS CONGRESSIONALLY-MANDATED OBLIGATION TO ENSURE THE PROVISION OF LEGAL REPRESENTATION FOR UNACCOMPANIED CHILDREN TO THE GREATEST EXTENT PRACTICABLE ................................................................................................9

III.  PRO BONO LEGAL SERVICES ARE NOT A VIABLE ALTERNATIVE TO REPLACE THE DIRECT LEGAL REPRESENTATION FUNDED BY ORR ................................................10

CONCLUSION ....................................................................................................14

APPENDIX A ......................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## STATUTES

8 U.S.C. § 1232 .................................................................................................3, 9

## REGULATIONS

45 C.F.R. § 410.1309 ........................................................................................3, 9

## OTHER AUTHORITIES

CONGRESSIONAL RESEARCH SERVICE, R43599, UNACCOMPANIED CHILDREN: AN OVERVIEW (2024) ...........................................................................7

*Executive Office for Immigration Review Adjudication Statistics: Current Representation Rates*, U.S. DEP'T OF JUSTICE (Oct. 12, 2023).......................6

*Explanatory Statement for Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Bill, 2023: Summary of Budget Estimates and Committee Recommendations*, U.S. SENATE COMMITTEE ON APPROPRIATIONS..............10

Marisa Taylor, Ted Hesson & Kristina Cooke, *Trump Officials Launch ICE Effort to Deport Unaccompanied Migrant Children*, REUTERS (Feb. 23, 2025 at 5:00am PST).........................................................................5

MARK GREENBERG, KYLIE GROW, STEPHANIE HEREDIA, KIRA MONIN & ESSEY WORKIE, STRENGTHENING SERVICES FOR UNACCOMPANIED CHILDREN IN U.S. COMMUNITIES, MIGRATION POLICY INSTITUTE (2021) ........................................................................................ 8, 11, 13

*Presidential Memorandum for the Attorney General and Secretary of Homeland Security: Preventing Abuses of the Legal System and the Federal Court*, THE WHITE HOUSE (Mar. 22, 2025) ......................................11

TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE ("TRAC"), DESPITE EFFORTS TO PROVIDE PRO BONO REPRESENTATION, GROWTH IS FAILING TO MEET EXPLODING DEMANDS (May 12, 2023).........................4, 11

Unaccompanied Children Program Foundational Rule, 88 FED. REG. 68948 (Oct. 4, 2023).................................................................................................6

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* former officials of the United States Department of Health and Human Services ("HHS") submit this brief urging the Court to deny Defendants-Appellants' Petition for Rehearing *En Banc* from the denial of their motion to stay the preliminary injunction entered by the District Court, enjoining HHS from cancelling funding appropriated by Congress for the legal representation of unaccompanied children in immigration proceedings.

*Amici* are former HHS officials Maria Cancian, Robert Carey, Mari Dorn-Lopez, Mark Greenberg, Larry Handerhan, Jeffrey Hild, Miriam Maigadi, Robin Dunn Marcos, Angel Padilla, Jenifer Smyers, Dr. Meg Sullivan, and Kate Wolff, whose roles are briefly summarized in **Appendix A**.  *Amici* have substantial combined years of service and experience implementing congressionally-authorized programs under the Administration for Children and Families and the Office of Refugee Resettlement.  *Amici* submit this brief to shed light on how HHS has long interpreted its congressional mandate to ensure that unaccompanied children are provided legal representation in immigration proceedings to the greatest extent practicable, by providing funding to legal service providers with critical experience and expertise in immigration law to support pro bono efforts

---

[1] All parties consented to the filing of this brief.  No party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money intended to fund the preparation or submission of this brief.

and provide for direct legal representation. *Amici* also write to explain the realities faced by unaccompanied children in the immigration system, and the limited availability of sufficient adequate pro bono legal representation for them.

*Amici* are invested in these issues because they have dedicated many years to efforts to assist unaccompanied children and improve the Unaccompanied Children Bureau, both inside and outside of government. Given their role in implementing these congressionally-mandated programs, and their familiarity with the realities faced by unaccompanied children and the limited availability of pro bono representation for them, *amici* are particularly well-suited to inform the Court of the substantial harm that would result from the requested stay.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Every year, thousands of children without lawful immigration status, including babies and toddlers, encounter the United States' immigration system without a parent or guardian. Many of these unaccompanied children flee their homes to escape violence and persecution, and experience exploitation or trafficking during their journey to the United States. These children often do not speak English and are unable to understand their basic rights or the nature of the immigration proceedings without assistance. Yet they must navigate a complex immigration system to seek asylum or other relief for which they may be eligible. Establishing the required elements for these legal claims is difficult and complex

even for an unrepresented adult, let alone a child.  Without a lawyer, unaccompanied children are unlikely to be able to fairly present their case for immigration relief, and risk being returned to the very trafficking, persecution, or abuse and neglect that they fled.

To meet unaccompanied children's acute need for legal representation in the immigration system, Congress enacted, as part of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), the requirement that HHS "ensure, to the greatest extent practicable …, that _**all**_ unaccompanied alien children … have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking."  8 U.S.C. § 1232(c)(5) (emphasis added).  In 2024, HHS's Office of Refugee Resettlement ("ORR") issued a Foundational Rule requiring ORR to "fund legal service providers to provide direct immigration legal representation for certain unaccompanied children," to the extent that "appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel …."  45 C.F.R. § 410.1309(a)(4).

Defendants' sudden termination of funding for direct legal representation for unaccompanied children will significantly increase the number of children who are forced to navigate the immigration system without an attorney, reducing their stability, increasing their vulnerability to human trafficking and exploitation, and

subjecting them to the very real likelihood of unjust removal from the United States. While Defendants asserted in their briefing to the District Court that pro bono representation is a viable alternative to direct legal representation funding, the reality is that ORR has been unable to ensure legal representation for more than 40% of unaccompanied children in immigration proceedings even through its longstanding approach of ***both*** promoting access to pro bono counsel ***and*** funding direct legal representation. It will be impossible to secure pro bono representation for the majority of the 26,000 unaccompanied children currently receiving direct legal representation funded by ORR.

Due to the limited availability of volunteer attorneys, unaccompanied children encounter backlogs and waitlists when trying to obtain pro bono representation. A study by Syracuse University's Transactional Records Access Clearinghouse Immigration Project found that, as of the end of April 2023, only 0.8% of those ordered removed from the United States in immigration court could find a volunteer lawyer to represent them. TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE ("TRAC"), DESPITE EFFORTS TO PROVIDE PRO BONO REPRESENTATION, GROWTH IS FAILING TO MEET EXPLODING DEMANDS (May 12, 2023), https://tracreports.org/reports/716/. And pro bono attorneys who do not otherwise practice immigration law will often need training and support to provide adequate representation.

The Trump Administration is now targeting unaccompanied children for immigration enforcement, making legal representation in children's immigration cases even more critical. Marisa Taylor, Ted Hesson & Kristina Cooke, *Trump Officials Launch ICE Effort to Deport Unaccompanied Migrant Children*, REUTERS (Feb. 23, 2025 at 5:00am PST), https://www.reuters.com/world/us/trump-administration-directs-ice-agents-find-deport-unaccompanied-migrant-2025-02-23/. The consequences of mistakenly or wrongfully deporting someone are grave. They are heightened for children, given their many vulnerabilities, especially children who are without a parent or legal guardian to help and protect them. *Amici* thus respectfully request that the Court deny the petition for rehearing *en banc* from the order denying their motion to stay the preliminary injunction that was properly entered by the District Court.

## ARGUMENT

## I. UNACCOMPANIED CHILDREN SUFFER HARM WHEN THEY MUST NAVIGATE THE IMMIGRATION SYSTEM WITHOUT A LAWYER

Legal representation in immigration proceedings is critical to support the well-being and stability of unaccompanied children. This includes helping children understand what options, if any, they may have to remain in the United States. Without a lawyer, unaccompanied children will often be unable to achieve a basic understanding of their rights, let alone make a case for asylum or other

immigration relief.  This can increase a child's anxiety and make them feel alone in a very complex legal system that has major life-altering consequences.

If a child is eligible for immigration relief that can assist them in remaining in the United States, it is essential for the child's well-being that this is pursued. Collectively, *amici* are familiar with many cases of children who were referred by ORR to be provided legal representation due to their vulnerabilities and potential eligibility for immigration relief, including children who have been victimized by crime and human trafficking, who are victims of abuse and neglect, and who are potentially eligible for asylum due to an individualized fear of persecution.

Although "ORR strives for 100% legal representation of unaccompanied children," Unaccompanied Children Program Foundational Rule, 88 FED. REG. 68948 (Oct. 4, 2023), nearly half still appear in immigration court without a lawyer. *Executive Office for Immigration Review Adjudication Statistics: Current Representation Rates*, U.S. DEP'T OF JUSTICE (Oct. 12, 2023), https://www.justice.gov/eoir/page/file/1062991/dl?inline= (in 2023, only 56% of unaccompanied children with pending immigration cases had an attorney).  The differences in outcomes for children without legal representation is stark.  From 2005 through 2017, 7.2% of children with legal representation received asylum, special immigrant juvenile status for abused, neglected, or abandoned children, or some other form of immigration relief, compared to only 0.3% without an attorney.

CONGRESSIONAL RESEARCH SERVICE, R43599, UNACCOMPANIED CHILDREN: AN OVERVIEW (2024) at 39-40 & Table 2, https://sgp.fas.org/crs/homesec/R43599.pdf. By contrast, 84% of unaccompanied children without lawyers received removal orders from immigration courts, compared to only 21% of represented children. *Id.* Without legal representation, unaccompanied children are far less likely to be able to adequately present a case for immigration relief to which they may be entitled, and are more likely to be deported back into potentially dangerous circumstances in their home countries, at great risk to their personal safety.

Children's stability in the United States is also impacted by whether or not they have legal representation. First, children's access to legal representation supports their legal case, which may provide them with permanency and stability in the United States. Expanding and increasing legal representation gives children the chance to receive legal status for which they are eligible, and, subsequently, the services that will provide them with stability and well-being. Legal counsel also supports vulnerable children by connecting them with other services in the community. In 2021, the Migration Policy Institute issued a report highlighting the importance of the services provided to unaccompanied children after they are released from ORR custody, including legal services. MARK GREENBERG, KYLIE GROW, STEPHANIE HEREDIA, KIRA MONIN & ESSEY WORKIE, STRENGTHENING SERVICES FOR UNACCOMPANIED CHILDREN IN U.S. COMMUNITIES, MIGRATION

POLICY INSTITUTE (2021), https://www.migrationpolicy.org/sites/default/files/publications/mpi-unaccompanied-children-services_final.pdf.  One of the report's findings was that legal services are "particularly crucial for children in light of their unique vulnerabilities," and that in addition to providing legal support, legal service providers "often connect children with services such as school enrollment, health care, mental-health services, food, and housing." *Id.* at 2.  Attorneys also serve a unique function due to the attorney-client privilege, as the lawyer may be the only person to whom the child can safely reveal that they are being exploited, trafficked, or abused.  *Id.* at 23.

Without these services, it has been *amici*'s experience that unaccompanied children's risk of exploitation increases.  For many unaccompanied children, their lack of immigration status makes them more vulnerable to unscrupulous employers seeking to exploit them with dangerous and underpaid work.  Traffickers similarly seek out vulnerable children.  Not only does legal representation increase children's ability to gain legal status and gainful employment, thus removing a vulnerability to exploitation, legal counsel can also help children understand their rights (including labor rights), and support them with access to legal relief or benefits that they may be eligible for based on their previous trafficking or exploitation experiences.

## II.   ORR HAS CONSISTENTLY RECOGNIZED ITS CONGRESSIONALLY-MANDATED OBLIGATION TO ENSURE THE PROVISION OF LEGAL REPRESENTATION FOR UNACCOMPANIED CHILDREN TO THE GREATEST EXTENT PRACTICABLE

ORR has consistently interpreted the TVPRA to mandate that it "ensure" the provision of legal services to unaccompanied children "to the greatest extent practicable," and that this necessarily means that ORR should provide funding for direct legal services when appropriated funds are available to do so, and when pro bono provision of legal services is not sufficient to meet the need.  8 U.S.C. § 1232(c)(5).  Indeed, in 2024 the ORR issued a Foundational Rule requiring itself to "fund legal service providers to provide direct immigration legal representation for certain unaccompanied children," to the extent that "appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel ...."  45 C.F.R. § 410.1309(a)(4).  As discussed further below, the availability of pro bono counsel has never been sufficient to meet the need for legal representation, and as such, ORR has also provided funding for direct legal representation for unaccompanied children appropriated by Congress for that purpose through a legal services contract.

Congress regularly appropriates funding for direct legal representation, and directs ORR to spend additional funds for legal services for unaccompanied children.  Congressional appropriators have consistently and repeatedly expressed

interest and support for legal services for children, including on regular calls with

one of the *amici* prior to their departure from ORR, and have enacted report

language directing ORR to use appropriated funding "for the significant expansion

of direct representation for children … consistent with the goals of the Trafficking

Victims Protection Reauthorization Act of 2008 for all children to have access to

counsel." *Explanatory Statement for Departments of Labor, Health and Human*

*Services, and Education, and Related Agencies Appropriations Bill, 2023:*

*Summary of Budget Estimates and Committee Recommendations*, U.S. SENATE

COMMITTEE ON APPROPRIATIONS, at 194, https://www.appropriations.senate.gov/

imo/media/doc/LHHSFY23REPT.pdf.

## III. PRO BONO LEGAL SERVICES ARE NOT A VIABLE ALTERNATIVE TO REPLACE THE DIRECT LEGAL REPRESENTATION FUNDED BY ORR

Based on *amici*'s collective experience, it is not feasible for Defendants to

rely on pro bono legal services to replace the federally funded direct legal

representation for unaccompanied children.  ORR has been unable to ensure legal

representation for a large percentage of unaccompanied children even through its

longstanding approach of both promoting access to pro bono counsel and funding

direct legal representation.  Indeed, ORR relies on its legal services contract for

promotion of and support for pro bono representation.  To *amici*'s knowledge,

there are no ORR staff whose responsibilities are to promote or support pro bono

legal services for unaccompanied children.  It is unclear what other mechanism (if any) ORR has to facilitate access to pro bono representation if the cancellation of the legal services funding is not enjoined.

Due to the limited availability of volunteer attorneys, many unaccompanied children encounter backlogs and waitlists when trying to obtain pro bono representation.  GREENBERG, ET AL., *supra*, at 24, https://www.migrationpolicy.org/sites/default/files/publications/mpi-unaccompanied-children-services_final.pdf.  As discussed above, less than 1% of persons who were ordered removed in immigration court were able to find a volunteer lawyer to represent them.  TRAC, *supra*, https://tracreports.org/reports/716/.

Compounding the existing shortage of pro bono representation, *amici* are concerned that the Trump Administration's recent Presidential Memorandum targeting and threatening immigration lawyers based on unsupported accusations of misconduct is likely to discourage some attorneys from practicing immigration law, and will thus make pro bono representation availability even more scarce.  *See Presidential Memorandum for the Attorney General and Secretary of Homeland Security: Preventing Abuses of the Legal System and the Federal Court*, THE WHITE HOUSE (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/preventing-abuses-of-the-legal-system-and-the-federal-court/ (falsely accusing "the immigration bar, and powerful Big Law pro bono practices"

of "frequently coach[ing] clients to conceal their past or lie about their circumstances when asserting their asylum claims … in an attempt to … deceive the immigration authorities and courts into granting them undeserved relief").

Other actions by the Trump Administration—including executive orders imposing sanctions on certain law firms that engage in pro bono work in opposition to the federal government, and agreements reached with other large law firms to provide hundreds of millions of dollars in pro bono legal services for causes supported by the President—are likely to have the dual effect of taking limited pro bono resources away from causes not supported by the Trump Administration (such as the representation of unaccompanied children in immigration court), and discouraging large law firms from engaging in any pro bono work in opposition to the federal government, for fear of reprisal.

Another limitation on the availability of adequate pro bono representation is the complexity of immigration law. Immigration law is a specialized field, and some cases require expertise—for instance, on human trafficking, state child welfare systems, and highly specialized immigration visas—which not all immigration attorneys have, much less volunteer lawyers without significant immigration experience: As explained in the 2021 Migration Policy Institute report, "[w]hile pro bono attorneys play a crucial role in expanding available representation, they may not be trained or have experience in immigration law, nor

in trauma-informed or culturally responsible service delivery." GREENBERG, ET AL., *supra*, at 24, https://www.migrationpolicy.org/sites/default/files/publications/mpi-unaccompanied-children-services_final.pdf.

Finding pro bono legal representation is also particularly difficult in some parts of the United States, including rural areas where many children are discharged from ORR custody. These areas are sometimes referred to as "legal deserts," in that there is little to no access to immigration attorneys. Recognizing this limitation, ORR provided funds to provide direct legal representation for unaccompanied children in these areas. If Defendants' cancellation of this funding is not enjoined, it is unclear how ORR would be able to locate pro bono attorneys for children who need legal representation in these locations.

The geographic spread of both ORR facilities and the locations where children are discharged is another limitation on finding pro bono representation. A nationwide network of attorneys is essential to ensure continuity in a child's legal representation, and to prevent representation from ending because their lawyer can only practice in certain jurisdictions. ORR transfers children between facilities and discharges them to sponsors in hundreds of counties in all fifty states, and attorneys have no say in that process. Many volunteer attorneys may not or cannot provide representation when they know that a child's jurisdiction will likely

change during the course of their case.  This makes it all the more difficult to recruit pro bono attorneys for the cases of unaccompanied children.

ORR currently relies on legal service providers that receive federal funding to promote and support pro bono representation of unaccompanied children, including by providing mentoring and guidance for volunteer attorneys.  The nationwide network of immigration legal professionals who receive funding from ORR can recruit pro bono attorneys in needed geographical areas and with particular expertise, as well as provide training and support for such attorneys.  Such a structure is in the best interest of children, as well as the government, to ensure that ORR fulfills its mandate to provide access to legal services.  It does not appear that ORR has any viable alternative means to provide access to pro bono representation for unaccompanied children, let alone to expand pro bono legal services in the wake of the sudden cancellation of the legal services funding.  Pro bono legal services is not a feasible alternative to funding direct legal representation.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that this Court deny the petition for rehearing *en banc* of the order denying the motion to stay the preliminary injunction entered by the District Court, enjoining Defendants from

abruptly cancelling congressionally appropriated funding for the legal

representation of unaccompanied children in immigration proceedings.

DATED: June 20, 2025                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Benjamin Bien-Kahn*
    Benjamin Bien-Kahn

*Attorneys for Amici Curiae*

## APPENDIX A

### List of *Amici Curiae* Former Officials of the
### U.S. Department of Health and Human Services

**Maria Cancian** served as Senior Advisor to the Secretary of the U.S. Department of Health and Human Services from January to April of 2015, and as Deputy Assistant Secretary for Policy, Administration for Children and Families from April 2015 to June 2016, with substantial responsibility for the unaccompanied children's program. She has over 30 years of experience in the design and evaluation of programs for vulnerable populations.

**Robert Carey** served as the Director of the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from March 2015 through January 19, 2017. Prior to that, he had over three decades of experience managing programs serving asylum seekers, as well as refugees and other vulnerable populations.

**Mari Dorn-Lopez** served as Senior Advisor in the Office of Refugee Resettlement and in the Office of the Assistant Secretary within the U.S. Department of Health and Human Services from August 13, 2023 to January 20, 2025. She previously had over ten years of experience representing children and advocating for best practices to serve unaccompanied and immigrant children.

**Mark Greenberg** served as Deputy Assistant Secretary for Policy at the Administration for Children and Families within the U.S. Department of Health

and Human Services from 2009 through 2013, and as the Administration for Children and Families Acting Assistant Secretary from 2013 until January 20, 2017. Subsequently, he served as Deputy General Counsel at the U.S. Department of Health and Human Services' Office of the General Counsel from December 2021 until January 20, 2025.

**Larry Handerhan** served as Chief of Staff and Deputy Assistant Secretary for Management at the Administration for Children and Families within the U.S. Department of Health and Human Services from January 25, 2021 to January 20, 2025, working closely with the Office of Refugee Resettlement. He has over 15 years of experience working on housing and human services issues that impact children and families.

**Jeffrey Hild** served as the Principal Deputy Assistant Secretary for the Administration for Children and Families within the U.S. Department of Health and Human Services from May 2022 through November 2024, and as the Acting Assistant Secretary at the Administration for Children and Families from August 2023 through November 2024. He previously served as the Deputy Assistant Secretary for Legislation at U.S. Department of Health and Human Services from March 2021 through May 2022 and the Chief of Staff at the Administration for Children and Families from July 2014 through January 2017. He previously worked in Congress for eight years and at the George Washington University

[4702519.3]

17

School of Public Health, where his work focused on policies and research related to child health and well being.

**Miriam Maigadi** served as Senior Advisor in the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from June 20, 2023 to January 20, 2025. She has eight years experience regarding best practices to serve unaccompanied and immigrant children.

**Robin Dunn Marcos** served as the Deputy Assistant Secretary for Humanitarian Services and Director of the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from September 2022 through January 2025. Prior to joining the Office of Refugee Resettlement, she worked in humanitarian services and held executive positions both domestically and internationally for over 25 years.

**Angel Padilla** served as Senior Policy Advisor at the Office of Refugee Resettlement and at the Administration for Children and Families within the U.S. Department of Health and Human Services between May 2021 and November 2022, working primarily on the unaccompanied children's program. Prior to that, he worked in legislative and administrative advocacy, including as a health policy analyst focused on immigrant access to health care services.

**Jenifer Smyers** served as the Chief of Staff and Deputy Director of the Office of Refugee Resettlement within the U.S. Department of Health and Human

Services from February 1, 2021 until January 20, 2025.  Prior to that, she had 15 years of experience in immigration advocacy focused on vulnerable populations.

**Dr. Meg Sullivan** served as the Principal Deputy Assistant Secretary performing the delegable duties of the Assistant Secretary for the Administration for Children and Families with the U.S. Department of Health and Human Services from November 2024 to January 2025, and as a Counselor to the Secretary for Health and Human Services, covering the Office of Refugee Resettlement, from January 2023 to November 2024.  Dr. Sullivan is a pediatrician with nearly 20 years experience across public health, human services, and child health and welfare.

**Kate Wolff** served as Counselor to the Secretary of Health and Human Services covering the immigration portfolio from September 1, 2021 to March 1, 2023.  Prior to that, she had 15 years of public service at the state and federal level, including as the Chief of Staff of the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from 2014 to 2016.

[4702519.3]

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-2808

I am the attorney or self-represented party.

**This brief contains** 3,789 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Benjamin Bien-Kahn    **Date** 06/20/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*